[LOCAL LAW.]

## M'DOWELL v. PEYTON and others.

The following entry, " I. T. enters 10,000 acres of land, on part of a treasury warrant, No. 9739, to be laid off in one or more surveys, lying between Stoner's fork and Hingston's fork, about six or seven miles nearly northeast of Harrod's lick, at two white-ash saplings from one root, with the letter K marked on each of them, standing at the forks of a west branch of Hingston's fork, on the east side of the branch, then running a line from said ash saplings, south 45 degrees east, 1800 poles, thence extending from each end of this line north 45 east, down the branch, until a line nearly parallel to the beginning line shall include the quantity of vacant land, exclusive of prior claims," is not a valid entry, there being no proof that the " two white-ash saplings from one root, with the letter K marked on each of them, standing at the forks of a west branch of Hingston's fork," had acquired sufficient notoriety to constitute a valid call for the beginning of an entry, without further aid than is afforded by the information that the land lies between those forks.

APPEAL from the Circuit Court of Kentucky.

Feb. 21st

This cause was argued by Mr. *Wickliffe* for

the appellant, and by Mr. *Talbot* for the respondents.

Mr. Chief Justice MARSHALL delivered the opinion of the Court.

This is an appeal from a decree pronounced in *March 3d.* the Court of the United States for the Seventh Circuit and District of Kentucky, dismissing a bill brought by the plaintiff, to obtain a conveyance for a tract of land in possession of the defendant under an elder grant, to which the plaintiff claims to have the superior equitable title. The defendant rests on his patent; and as the entry under which the plaintiff claims was made before that patent issued, the cause depends essentially on the validity of the entry. It is in these words:

Dec. 24th, 1782.—" John Tabb enters 10,000 acres of land, on part of a treasury warrant, No. 9739, to be laid off in one or more surveys, lying *between Stoner's* fork and *Hingston's* fork, beginning about *six* or *seven* miles nearly northeast of Harrod's lick, at two white-ash saplings from one root, with the letter K marked on each of them, standing at the forks of a west branch of Hingston's fork, on the east side of the branch, then running a line from said ash saplings, south 45 degrees east, 1600 poles, thence extending from each end of this line north 45 east, down the branch, until a line nearly parallel to the beginning line shall include the quantity of vacant land, exclusive of prior claims."

The counsel for the defendant insists, that this

entry is invalid, because it does not describe the land with that certainty which is required by the land law of Kentucky. They contend that the description given to find the beginning is false, and calculated to mislead a subsequent locater.

Harrod's lick, Stoner's fork, and Hingston's fork, are proved to have been objects well known by those names at the date of the entry, and serve as a general description of the country in which the land lies ; but it is not shown, that the two white-ash saplings from one root, with the letter K marked on each of them, standing at the forks of a west branch of Hingston's fork, had acquired sufficient notoriety to constitute a valid call for the beginning of an entry, without further aid than is afforded by the information that the land lies between these forks. Its identity is proved, but the decisions on the act of 1779 require notoriety as well as identity. The plaintiffs' counsel maintain, that there are descriptive words in the entry sufficient to bring a person, using reasonable diligence, and searching for this beginning, near enough to it to find the two white-ash saplings. Those descriptive words are, " Beginning about six or seven miles nearly northeast of Harrod's lick, at two white-ash saplings, &c. standing at the forks of a west branch of Hingston's fork, on the east side of the branch." The information which is to guide a subsequent locater to the white-ash saplings, is the course and distance from Harrod's lick, and the forks of a west branch of Hingston's fork.

A survey was made by the order of the Court,

and the plat shows that the saplings mentioned in the entry are three miles and one hundred and forty five poles from Harrod's lick, and that the course which leads to them is north 53 degrees east  The real distance, then, is about one half the distance called for in the entry, and the course varies eight degrees.

To obviate the objection founded on this variance, the plaintiff alleges the distinction between the descriptive and locative calls of an entry. The purpose of the first is to bring the subsequent locater into the neighbourhood of the land he means to avoid, and that of the second is to find the land already appropriated, so as to enable him to appropriate the adjacent residuum. The precision, therefore, which is necessary in a locative call, has never been required in that which is descriptive.

The correctness of this principle is not controverted. Still, it is necessary that the descriptive calls should designate the place so nearly, as to give information which would enable a subsequent locater of ordinary intelligence to find the land previously entered, by making a reasonable search. It will not be pretended, that in such a case as this, exactness in distance or in course, would be indispensable to the validity of the entry; but distance and course are both intended to lead to the ash saplings, and, if unaided by other description, could alone be regarded by the person who should search for them. He would pursue a northeast course at least six miles from Harrod's lick ; and not finding a western branch

of Hingston, would search for such a stream in every direction, from the place to which he was conducted by his course and distance. In an unexplored country, covered with cane and other wood, it would be extremely difficult to find an object far from being conspicuous, at a distance of two or three miles, and would require more time"and labour than ought to be imposed on a person desirous of appropriating the adjacent residuum. The counsel for the plaintiffs would not attempt to support such an entry; but they contend that the error in both course and distance is corrected by other parts of the entry, and by the situation of objects to which the attention is directed.

The land is required to lie between Stoner and Hingston; and the person who should pursue a northeast direction from Harrod's lick, in search of it, would strike Hingston at the distance of five and one eighth miles. He would, consequently, know that he had passed the ash saplings, and would return in search of them. His search would be directed to a western branch of Hingston, at the forks of which the two white-ash saplings would be found. It is contended, that this description would lead the inquirer to the mouth of Clear creek, proceeding up which, he would find at one of its forks the white-ash saplings, at which Tabb's entry begins.

If this statement was strictly accurate, there would certainly be great force in the argument founded on it. With certain information that Clear creek was called for in the entry, and that

its beginning was at a place so well described as to be known when seen, it might not, perhaps, be too much to require the person desirous of acquiring adjacent land to trace that creek to the forks at which the saplings stand.   But the inquirer is not directed to Clear creek.   He is directed to a western branch of Hingston, and two branches empty into that stream, the one above and the other below the point, at which a northeast course from Harrod's lick would strike it, and about equi-distant from that point.   There is no expression in the entry which would, in the first instance, direct the inquirer to Clear creek, on which the saplings stand, in preference to Brush creek, on which they do not stand.   His attention would be rather directed to Brush creek, by a circumstance which is undoubtedly entitled to consideration, and has always received it in Kentucky.   It is this : Clear creek had, at the time this entry was made, an appropriate name, which distinguished it from the other western branches of Hingston ; and a locater, intending to place his beginning on that creek, might be reasonably expected to call it by its appropriate name, and not to refer to it by a general description which it possessed in common with many other streams. The inquirer, therefore, would proceed, in the first instance, to Brush creek, because that creek would be designated, when Tabb's entry was made, only as a western branch of Hingston. The plaintiff contends that this error would soon be corrected, because the entry calls for a northeast course to run down the branch, and Brush

creek bends so much at a small distance from its mouth, as to satisfy the inquirer that this could not be the stream intended by the entry. With the plat before us, we can readily make this discovery. But a person unacquainted with the course of Brush creek, would not make it until he had proceeded up it a considerable distance. He could not know, till he had done so, that the creek would not again change its course, and pursue a southwestern direction. If, after making this discovery, he should go to Clear creek, he would find its first course from Hingston a very discouraging one; nor would its course be adapted to the call of the entry, until he came within a very short distance of the fork at which the saplings stand. Add to this, Clear creek appears to fork several times before reaching the saplings; and at each of these forks, an accurate search must be made before the inquirer would proceed farther up the creek.

The course and distance from Harrod's lick, mentioned in the entry, are calculated to mislead a person desirous of knowing the land it designates; and although these errors might unquestionably be corrected by other parts of the description, which would conduct us with reasonable certainty to the beginning, it may well be doubted whether the whole of this entry, taking all its parts together, and combining them, contains such reasonable certainty. Had it been now, for the first time, brought before a Court for adjudication, it is liable to such great and serious objections, that it would most probably be

pronounced invalid. But the highest Court of
Kentucky has already given this decision; and
this Court has always conformed to that construc-
tion of the legislative acts of a State, which has
been given by its own Courts. This general
principle is entitled to peculiar consideration,
when it applies to an act which regulates titles to
land.

The case of *Cochran* v. *Thomas*, reported in
*Hardin*, 261. depended on the validity of this
entry, and in that case, the Court decided against
its validity. The authority of this decision has
been questioned on several grounds.

1st. It was made by only two Judges, when the
Court consisted of four, the others being inte-
rested.

Had a contrary opinion been avowed by both or
either of the other Judges, or by any Judge since
this decision was made, its authority would un-
doubtedly be much impaired, if not entirely an-
nulled. But no such contrary opinion has been
expressed, although the decree in *Couchman* v.
*Thomas* was pronounced in the spring term of
1808. Since then it was made by a tribunal,
which was at the time legally constituted, and
has remained unquestioned for sixteen years, this
Court must admit its authority in like manner as
if it had received the formal approbation of a
majority of the Judges.

2d. A second objection is, that it is a single
decision; and the Courts of Kentucky do not
consider themselves as bound by a single deci-
sion, if its principles are believed, on more ma-

1825.

M'Dowell
v.
Peyton.

ture deliberation, to be unsound.   Those Courts, we are informed, have often given different decisions on the same entry, when brought before them in a different case, prepared with more care.

That different decisions will be often made on the same entry, can excite no surprise, when it is recollected that the validity of an entry does not depend entirely on its own terms, but on the application of those terms to external objects, and the general notoriety of those objects, as proved by the testimony in each case.   If in one case, the party claiming under an entry had neglected to prove the notoriety of some material call, by the notoriety of which its certainty was to be established, in consequence of which defect the entry was declared to be invalid, this could constitute no reason for pronouncing the same decision in another case, between different parties, who had been careful to bring before the Court ample testimony of the fact on which the cause must depend.   This difference of decision would constitute no difference of principle.

But the Court can perceive no new testimony in the case under consideration, which can vary it, to the advantage of the plaintiff, from the case of *Couchman* v. *Thomas.*

It may be very true, that a single decision cannot be permitted to shake settled principles, and that this Court ought not to consider one judgment as overturning well established doctrines, and introducing a new course of opinion.   But, certainly, a decision on the very point which has remained for many years unquestioned, has the

first impression in its favour, and must be proved to overturn established principles before this Court can disregard it.

The land law of Kentucky requires that the holder of a land warrant, shall locate it "so specially and precisely, that others may be enabled with certainty to locate other warrants on the adjacent residuum."

In construing this provision of the law, Courts have always inclined to support entries, where this inclination could be indulged consistently with the provision itself; but they have always supposed a reasonable degree of precision and certainty to be indispensable to the validity of every entry.

They have laid down great general principles, in the application of which to particular cases, the shades of difference are as numerous and as nice as in the application of the principle, that the intention of the testator shall govern, to the words of a will.

The description of the land to be acquired, which every entry must contain, may be divided into general and special. The general description must be such as to bring the holder of a warrant to be located into the neighbourhood of the land already appropriated, and such as to enable him to find that land with reasonable diligence; the special description, or, in the technical language of the country, the locative calls of the entry, must be such, as to ascertain and identify the land. All the cases recognise these principles, and claim to come within them.

The counsel for the plaintiff has cited many cases, in which entries have been sustained, although the whole description they contain has not been precisely accurate.

The Court has examined these cases, and is of opinion, that in all of them, although the description may be in part defective and uncertain, such defect and uncertainty have been cured by other calls, which afford all the information that could be reasonably required. An example of this is furnished by the case of *Taylor* v. *Kincaid*, (*Hardin*, 82.) The entry was made "on the head of Willis Lee's branch, four miles from Leesburg," and was sustained, although the head of the branch was, in truth, eleven miles from Leesburg. In this case, however, the mistake in the distance was corrected by the notoriety of the object itself. Willis Lee's branch, at the time, and before the location was made, was so notorious that the inquirer could not be misled by the mistake in the distance. That a part of the description which is erroneous, may be discarded, if the object called for is itself so notorious that it requires no aid from description, and cannot be mistaken; and that such part will not vitiate the entry, may be admitted, without impugning the judgment in the case of *Couchman* v. *Thomas*. Tabb's entry contains no descriptive call, which would conduct the inquirer to the white-ash saplings he is in search of, and the saplings themselves were not objects of sufficient notoriety to cure the defects in the general description.

Decree affirmed.