THE NEW ENGLAND MORTGAGE SECURITY CO., PLAINTIFF IN ERROR, V. JONATHAN ADDISON ET AL., DEFENDANTS IN ERROR.

1. **Agency:** USURY. The question of agency is one of fact to be determined from the evidence in a case. Therefore where a correspondent of the C. Banking Co., who had advertised money to loan, in filling out an application for a loan, stated therein that the applicant employed him and the C. Banking Co. to negotiate a loan for him, *Held*, That the applicant was not estopped from showing that the correspondent was the agent of the C. Banking Co.

2. **Evidence** examined, and *Held*, Sufficient to sustain the report of the referee.

ERROR to the district court for Dixon county. Heard below before BARNES, J., on exceptions to report of referee.

*Gannt & Norris (D. G. Hull* with them), for plaintiff in error.

*J. J. McAllister,* for defendants in error.

MAXWELL, J.

This action was brought in the district court of Dixon county to foreclose a mortgage upon real estate, the defense being usury. The cause was referred to Hon. Isaac Powers, who, after hearing the evidence, found that while the note and mortgage were given for $300, with ten per cent interest thereon, that the makers received but $255, the remainder of the $300 being retained for commission. The referee also found that Addison at various times had paid interest on said debt amounting in the aggregate to the sum of $90. The report was confirmed and a decree of foreclosure rendered for the sum of $120. The plaintiff appeals to this court.

A large amount of testimony was taken, the full record covering 190 pages. That $45 out of the $300 was retained, is undisputed; but the plaintiff claims that this sum was retained by Addison's agents, and that the case is clearly within that of *Philo v. Butterfield*, 3 Neb., 256. Both parties agree that the question of *agency* is the principal one for determination.

It appears from the testimony that the principal office of the plaintiff is in Boston, and that the Boston office of the Corbin Banking Company is in the same building, on the same floor, and adjoining that of the plaintiff. It also appears that the plaintiff corporation was organized for the purpose of loaning money as stated by Saltonstall "on mortgages on western farms, and it was no part of its business to loan money in any other way." How it proposed to reach western farmers without some means of communicating with them, and ascertaining the character of the security offered, does not appear. The testimony also shows that Mr. Corbin, of the Banking Company, is a stockholder in the Mortgage Security Co. It is apparent, too, that a very large proportion of the loans made by the plaintiff, were made through the Corbin Banking Co., the only other

parties named being a firm in Kansas City. This loan was made through Hon. J. B. Barnes, of Ponca, who testifies as follows: "I wrote to them (the Corbin Banking Co.) myself to know if I could procure any loans through them for parties wishing to obtain money, and I think Mr. Wakefield wrote a favorable word to them for me. In answer I got a letter from this Corbin Banking Company stating that I could act as their correspondent in this vicinity, and they sent me the blank contracts, etc., which I have before spoken of."

Q. Were you required to accompany this application which you sent into the Corbin Banking Company with a private letter to the company stating that the applicant for the loan was in good standing so far as honesty and punctuality were concerned, and the real condition of his lands?

A. No, sir, not a private letter. But as and a part of the application, I was required to give my opinion as to the desirability of the loan, and the standing of the appplicant in regard to his being considered prompt in the payment of his debts and honest. * * * * I had to answer in effect each question before the loan could be approved.

Q. Then unless you approved of the applicant for the loan, they would not place it?

A. Yes, sir, that is a fact.

Q. Did you recommend Mr. Addison to them?

A. I did.

There is much more of Mr. Barnes' testimony to the same effect, which it is unnecessary to copy. He seems to have negotiated loans for the Corbin Banking Co., to the amount of about $15,000.

F. W. Dunton, the cashier of the Corbin Banking Company, testifies that the notes and mortgages in question were prepared in the office of the Corbin Banking Co., and sent to Mr. Barnes to procure the signatures of the defendants and their acknowledgment to the mortgage, and to be returned to the Banking Co. The testimony also shows that

the blank applications for loans were furnished to Mr. Barnes by the Banking Co. This application required the applicant to state the condition of the premises, the amount of stock, buildings, and improvements, the amount of grain raised the previous year, the amount of the applicant's indebtedness, and the use to which he intended to apply the money borrowed, and required Barnes to give *his view* as to the desirability of the loan; that is, whether it would be a safe investment or not. It also appears that Barnes obtained and forwarded the abstract of title for the mortgaged premises, and did all other acts, so far as we can see, to protect the interests of the parties for whom he was acting as "correspondent."

That these services were rendered by Mr. Barnes for the Banking Co., we think the evidence clearly shows. A great deal of stress is laid by the plaintiff on the fact that Addison stated in his application that he employed Barnes and the Banking Co. as *his* agents to procure the loan, and it is intimated, although not directly alleged, that he is estopped from denying such agency. No grounds for an estoppel are shown, and the question of agency, like any other fact, must be determined from the evidence. And in our opinion the report of the referee is sustained by the clear weight of the testimony, and the decision confirming the report must be affirmed. It is apparent that there is an error in the amount of the decree and that the plaintiff is entitled to $45 more than was awarded in the court below, viz., the sum of $165, and a decree will be entered in this court for that sum.

JUDGMENT ACCORDINGLY.

THE other judges concur.