## VAN ETTEN *v.* COOK.

Decided May 23, 1891.

*Laborers' lien—Shingles.*

> Under section 4425 of Mansf. Dig., to enforce a laborers' lien upon the product of labor, one must show that his labor directly contributed to its production: accordingly, the superintendent of a shingle mill who files saws and occasionally does other work at the mill, the night watchman who also cleans the machinery and raises steam in the morning, and another who removes sawdust and splints from the mill, are not entitled to liens upon shingles sawed at the mill; but the engineer, sawyer and all others who directly assisted in sawing the shingles, including one who assorted them, are entitled to the benefit of the lien.

APPEAL from *Conway* Circuit Court in chancery. JORDAN E. CRAVENS, Judge.

*Sanders & Watkins, W. L. Moose* and *Ratcliffe & Fletcher* for appellant.

The laborers' lien law was intended to apply to agricultural laborers. Mansf. Dig., secs. 4425, 4427, 4434. 1 Jones on Liens, sec. 761. With the exception of 50 Ark., 244, when the lien was conceded by counsel, and 51 *id.*, 317, the lien has been applied only in favor of laborers on farms and like work. See also 27 Ark., 564, for definition of a laborer. Bony, the superintendent, was not entitled to a lien. 43 Ark., 168; 81 N. C., 340; 31 Am. Rep., 503. Winfield, the

watchman, and the sawdust and splint remover *produced* nothing by their labor. The act is summary and strictly construed. 27 Ark., 569 ; 29 *id.*, 601 ; 43 *id.*, 170.

*Carroll Armstrong* and *J. H. Harrod* for appellees.

Every one is a producer who engages directly in the work that results in the production. A " little skill " is not fatal to the lien of the laborer. 27 Ark., 564. A laborer in a saw-mill is entitled to the lien. 50 Ark., 244. One who threshes grain does not produce it, but is entitled to a lien. 8 Iowa, 207.

HUGHES, J. The appellant brought an action in replevin to recover a lot of shingles, held by appellees, Cook as constable and Shelby as sheriff, under writs of attachment levied thereon by them to satisfy the liens of laborers for work performed in making the same.

Appellant afterwards filed a complaint in equity to have it determined who had liens and for what amounts, expressing a willingness to pay all valid and just claims that were liens upon the shingles. He asked for an order for a receiver, and a temporary restraining order to prevent the sale of the shingles till the cause could be heard, which were granted. The replevin suit was transferred to the equity docket and consolidated with the other. The laborers all entered their appearance, and the case was tried in chancery on oral evidence not embodied in the transcript. The circuit court found that " H. W. Burns owned and operated a shingle mill near Germantown in Conway county, Arkansas ; that the shingles in controversy were made by said shingle mill; " and that the services rendered by the laborers claiming liens were necessary to the successful operation of the mill, and were rendered in the manufacture of the shingles, excepting the services of one Hill Hinson ; that the shingles were the property of appellant, subject to the liens as set out in the decree; and that, upon payment of the amounts secured by said liens in twenty days, the shin-

gles should be delivered to appellant; otherwise that they should be sold to pay the amounts secured by the liens.

Appellant prosecuted an appeal. The only question for our consideration is, Had the laborers liens under section 4425, Mansf. Dig., which is as follows: "Laborers who perform work and labor for any person under a written or verbal contract, if unpaid for the same, shall have an absolute lien on the production of their labor for such work and labor?"

**Construction of laborers' lien act.** Liens were decreed to exist in favor of the following persons: J. G. Bony, who was "superintendent of the mill, filed the saws and occasionally did other work at the mill," for $73; W. H. Winfield, who watched the mill at night, cleaned the machinery, and raised steam in the morning, for $14.75; L. Charton, who removed the sawdust and splints from the mill, $10.75; Dave Patterson, who removed sawdust and splints, $3.95; Mike O'Laughlin, who removed sawdust and splints, $10.31. In the opinion of the court the shingles were not the product of the labor of any of these parties, wholly or in part, within the meaning of the statute, and no one of them was entitled to a lien upon them under the statute for labor expended in producing them. *Flournoy* v. *Shelton,* 43 Ark., 168.

Liens were declared in favor of A. L. Currant for $78; Frank Currant for $5.40; Jacob Johnson for $27; A. L. Burns for $15.40, and A. W. Nichols for $25.15; the first two were the sawyers at the mill, and the latter three operated drag saws thereat. *Russell* v. *Painter,* 50 Ark., 244. And in favor of T. J. Hughes for $32.40 and W. H. Winfield for $8.62 for running the engine; and in favor of the following persons for the services and amounts respectively opposite their names: W. M. Taylor for $39.95, William Dorf for $20, Henry Johnson for $7.40, for services rendered in piling blocks for the sawyer, which we understand to mean putting the blocks, out of which the shingles were made, in position to be made into shingles; W. M. Ryan for $56.75, for operating "rat catcher," the machine which trimmed the

edges of the shingles; J. H. Finney for $17.35; Chris. Youngblood for $11.95, for splitting bolts, as we understand, to be made into shingles. It appears that the labor of each of the above named parties directly contributed to the production of the shingles. A lien was also declared in favor of Edward Tenes for $29.50 for assorting shingles. This was labor that added to the value of the shingles, and was necessary to put them in marketable shape and condition. All of the parties last named were within the statute, and entitled to liens, for the reasons indicated. The laborers' lien act must be strictly construed. *Dano* v. *Railway Co.*, 27 Ark., 564; *Flournoy* v. *Shelton*, 43 Ark., *supra*.

No lien can exist under this statute for labor performed remotely tending to the production of an article, but, in order to maintain the right to a lien upon the production of labor under the statute, it must be shown that the labor directly contributed to the production of it.

The cause is reversed and remanded, with directions to enter a decree in accordance with this opinion, and that the property be sold, unless the liens are discharged otherwise.