## N. RANDOLPH v. JOHN HUDSON.

### (Filed June 6, 1903.)

1. **CONTINUANCE.** When application is made for continuance and the same is resisted on the grounds that it is made for delay, and where counter affidavits are filed, and the trial court finds that the application is made for delay, this finding will not be regarded as error, if such counter affidavits reasonably tend to support such finding. )

2. **SECONDARY EVIDENCE.** Where it is shown that the note sued upon is lost, and after diligent search cannot be found in the place or places where the same has usually been kept by the party, it is not error to admit oral evidence of its contents.

3. **FORECLOSURE OF CHATTEL MORTGAGE IN PROBATE COURT.** Where an action is brought on a promissory note in the probate court, and a request is made for a foreclosure of a chattel mortgage executed to secure the payment of such note, such request will not bar the right of the court to render judgment on the note if the same is within the jurisdiction of said court.

4. **NEGOTIABLE PAPER.** Under the code of this territory a note in the following language, "$275.00. Enid, O. T., May 15, 1894. Thirty days after date I promise to pay to the order of J. H. Thomas two hundred and seventy-five ($275.00), with interest at the rate of twelve per cent. from date if not paid at maturity. Value received. N. Randolph." is not a negotiable instrument, and is subject to the same defenses it would be in the hands of the original payee; and a perpetual injunction granted after a full hearing between the original parties to said note before a court having jurisdiction restraining the collection of such note, will be a complete defense to a suit on the same when brought by one who claims to be a bona fide purchaser of the same before maturity, and without notice. Such a defense should be allowed by the court at any time before final judgment; and a refusal to permit the pleadings to be amended so as to show such defense is reversible error.

5. **CERTAINTY NECESSARY TO MAKE INSTRUMENT NEGO-TIABLE.** Certainty as to payor and payee, the amount to be paid,

and the terms of payment is an essential element of a negotiable promissory note, and that certainty must continue until the obligation is discharged.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before John L. McAtee, Trial Judge.*

*John F. Curran,* for plaintiff in error.

*W. S. Denton,* for defendant in error.

## STATEMENT OF FACTS.

On September 4, 1894, the defendant in error, John Hudson, commenced this action in the probate court of Garfield county against N. Randolph, to recover two hundred seventy-five dollars, with interest at twelve per centum from May 15, 1894, upon a note executed by N. Randolph to J. H. Thomas, which note was in words and figures as follows: "$275.00. Enid, O. T., May 15, 1894. Thirty days after date I promise to pay to the order of J. H. Thomas two hundred seventy-five, ($275.00), with interest at the rate of twelve per cent. from date if not paid at maturity. Value received. N. Randolph." and assigned to defendant in error, and to foreclose a chattel mortgage given to secure the payment of the note.

The said N. Randolph filed his answer in said action, alleging that the note was procured by misrepresentation and fraud; that it was without consideration, and that prior to the commencement of said action, a temporary order of injunction issued out of the district court of Garfield county in an action there pending wherein N. Randolph was plaintiff and J. H. Thomas was defendant, restraining the defendant, J. H.

Thomas from negotiating and collecting said note, and that said order was then in full force and effect.

The case was tried in the probate court and judgment rendered against the defendant; from said judgment an appeal was taken to the district court.

Prior to the time the cause was set for trial in the district court, the defendant made an application to file an amended answer, setting up the fact that the temporary order of injunction mentioned in defendant's answer had become final, and that the judgment of the court in the injunction proceedings had proceeded to final judgment, subsequent to the rendering of judgment in this cause in the probate court. The trial court refused to permit said amendment, to which the defendant in the court below saved exceptions.

Previous to entering upon the trial in the district court the defendant made an application for a continuance on the grounds of the sickness of the defendant, which application was resisted by the plaintiff on the ground that said application was made not in good faith, but for the purposes of delay; the trial court overruled said application for a continuance, to which the defendant saved exceptions.

Judgment was rendered in the district court in favor of plaintiff and against the defendant for the sum of four hundred ninety-four and 87-100 dollars ($494.87), with interest thereon at the rate of twelve per centum per annum from the third day of December, 1900, and costs of suit.

Motion for a new trial having been regularly filed, heard and overruled, and exceptions saved, defendant appeals said

cause, and brings the same here for review.   Reversed and remanded.

Opinion of the court by

IRWIN, J.:   While there are several assignments of error in this case, we think it will be necessary to take notice of but three.   The first assignment of error is that the trial court erred in refusing the application of the defendant in the court below to amend his answer, so as to show that the injunction writ temporarily issued by the district court had, subsequent to the rendition of judgment in the probate court, been made a final order.   This assignment of error we will defer discussing until other errors assigned are disposed of.

The second error assigned is, that the court erred in over-ruling defendant's application for a continuance on account of the sickness of the defendant.   The record discloses that this motion was resisted by the plaintiff on the grounds that the same was made for delay, and not in good faith.   An affidavit was filed on the part of the defendant in the court below, and counter affidavits by the plaintiff, and on the consideration of these affidavits, the trial court found that said application was not made in good faith, but was for delay. The rule has been universally recognized in this court that the findings of the trial court on questions of fact will not be disturbed by this court where there is evidence which reasonably tends to support such finding.   In this case we think that an examination of the affidavits on file will show that the counter affidavits did reasonably tend to support the finding of the trial court, hence, such finding will not be disturbed.

Another objection urged by the plaintiff in error and as-

signed as error here is, that the court permitted, over the objection of the defendant in the court below, the introduction of oral testimony, showing the contents of the note sued on in this case. The showing was made to the trial court that the note was lost, and that diligent and reasonable search had been made by the plaintiff to find the same in the place or places in which he usually kept such note; under such a finding we do not think that the action of the court in receiving oral testimony is reversible error.

The first and only remaining assignment of error is, that the court erred in refusing the application of the defendant in the court below for leave to amend his answer.

In considering this assignment of error it is necessary that we consider the question whether such a note as the one sued on in this case is or is not a negotiable instrument under the laws of this territory; for if the note in question was non-negotiable, then it would be subject to the same defenses in the hands of the plaintiff in this case that it would have been in the hands of the original payee, and, this being true, an injunction granted by a court of competent jurisdiction after a full hearing, and as a final judgment restraining the original payee from the collection of this note, would be a complete defense. And in the exercise of a sound discretion the trial court should permit the pleadings to be so amended as to admit such a defense at any time before the final judgment in the case; and to refuse so to do would be reversible error.

The principal importance which is to be attached to the question of negotiability, arises from the rule of law which

subjects all non-negotiable notes to any equities which may exist between prior parties, even when they are transferred before due to a *bona fide* purchaser for value.

A negotiable instrument is one that is simple, certain and unconditional, and is so defined by the law merchant. It has always been held, both at the common law and by the decisions of most states, that any instrument which does not come within this definition should not be construed to be a negotiable instrument. There seems to be a great difference of opinion advanced by the courts of the different states upon the question as to whether the adding of an attorney's fee to a note as a penalty for non-payment at maturity will or will not render a note non-negotiable. On an examination of the authorities we are of the opinion that the weight of authority is that such an addition in the absence of an express statute will not render a note, which by its terms is negotiable, non-negotiable, although a great many respectable authorities have held to the contrary.

In the case of *Smith v. Nitingale,* 2 Starkey, 375, it was said by Lord Ellenborough, that:

"An instrument wherein the promise to pay J. S. the sum of sixty-five pounds, with lawful interest for the same, and all other sums which should be due him, was not a promissory note."

In the case of *Carlos v. Fancourt,* 5 Term R. 485, Lord Kenyon observed:

"It would perplex the commercial transactions of mankind if paper securities of this kind were issued out into the world encumbered with conditions and contingencies, and if the person to whom they were offered in negotiation were

obliged to inquire when these uncertain events would proba-
bly be reduced to certainty."

The supreme court of the state of Minnesota in the caseof *Jones v. Radatz,* reported in the 6 N. W. Rep. 800, held
that the following note was not negotiable:

"$135.00.    P. O. St. Paul, County of Ramsay, State of
Minnesota, September 7, 1898.

"Three months after date we, or either of us, promise
to pay to H. K. White & Co., or bearer, $135.00, payable at
the Second National Bank of St. Paul, Minnesota, for valuereceived, with twelve per cent. interest per annum from date,
and reasonable attorneys fees if suit be instituted, for thecollection of this note."

Chief Justice Gillilan in this case said:

"The instrument before us has certainty as to the $135.00'
and the interest, but the whole instrument must be taken to-
gether. The promise to pay the one hundred thirty-five dol-
lars and interest is not the whole of the promise, not the entire
obligation created.  The entire promise and obligation is to·
pay absolutely that sum and interest, and in a particular con-
tingency, to-wit, the bringing of suit by the payee after de-
fault, to pay a further amount not fixed and not capable of be-
ing ascertained from the instrument itself."

The supreme court of Pensylvania in the case of *Woods·
v. North,* 84 Pa. St. 407, held the following instrument to
be a non-negotiable promissory note:

"$377.00                    Huntington, Pa., May, 5, 1875.
"Sixty days after date I promise to pay to the order of
E. H. Woods, at the Union Bank of Huntington, $377.00 and
5 per cent. collection fee if not paid when due without de-
falcation.    Value received."

In this case Justice Sharswood said:

"In the paper now in question there enters as to the amount an undoubted element of uncertainty. If this collateral agreement may be introduced with impunity, what may not be? It is the first step in the wrong direction which costs; these instruments may come to be lumbered up with all sorts of stipulations and all sorts of close contentions, and litigation results."

The supreme court of Michigan in the case of *Bank v. Purdy,* 56 Mich. 6, 22 N. W. 93, held that the following was not a negotiable promissory note:

"Three hundred sixty-six dollars and sixty-six cents ($366.66).

"COLDWATER, MICH., February 27, 1883.

"On the first day of November, 1883, we, the undersigned, whose postoffice address is Algansee, county of Branch, and state of Michigan, jointly and severally for value received, promise to pay to E. M. Birdsall & Co., or order, $366.66-100 dollars, with interest at 7 per cent. per annum if paid when due; if not so paid then the interest shall be 10 per cent. per annum from date. We also agree to pay exchange and all expenses, including attorney's fees incurred in collection; payable at the First National Bank in Coldwater, Michigan. We do hereby relinquish and waive the benefit of all laws, exempting real and personal property from levy and sale, and all benefit of relief from valuation and appraisement laws."

Mr. Justice Champlin, in rendering the opinion in this case, says:

"The modern tendency to interpolate into such instrument engagements and stipulations not recognized by the law merchant affecting the certainty as to the amount due and payable thereon or the time of maturity should be discounte-

nanced and held to destroy their negotiability and deprive them of the character of promissory notes, and they should be relegated to the domain of ordinary contracts."

And again, the supreme court of the state of Michigan in the case of *Altman v. Rittershofer,* reported in the 36 N. W. p. 74, where the note was as follows: "$130.00. Bay City, Mich., October 17, 1885. Six months after date I promise to pay to the order of M. Cohn, one hundred thirty dollars at the Bay National Bank of Bay City, Michigan, for value received, without any release whatever from valuation or appraisement laws, with 8 per cent. interest from date until paid and attorney's fees," held that such a note was non-negotiable. Mr. Justice Long, in delivering the opinion says:

"A promissory note is an unconditional written promise signed by the maker to pay absolutely and at all events a sum certain in money either to the bearer, or to a person therein designated, or his order. The only question upon the negotiability of this instrument is whether the words 'and attorney's fees added thereto renders the sum to be paid uncertain. The better reasoning, in my judgment, holds such instruments non-negotiable."

Now, measured by the rule laid down by these authorities, does the note in question contain that element of certainty required by the law merchant in order to make it a negotiable instrument? The note provides certainty as to the principal; but as to the question of interest, the amount of interest, if any, to be collected on the note, depends upon the payment or non-payment of the note at maturity. The note upon its face provides that it shall only draw the rate of interest therein specified in case the same is not paid at maturity; thus, the reasonable inference would be from that lan-

guage that if it was paid at maturity it would be without interest, or in any event no greater rate of interest than the legal interest provided by law. It is certain that from the language used it was intended that the note should not draw twelve per cent. if paid when due, because the twelve per cent. mentioned in the note is only upon condition that the said note is not paid at maturity.

Our statute in regard to negotiable instruments, it is claimed by the counsel for plaintiff in error, was adopted from the statutes of South Dakota. However that may be, it is apparent that the language of our statute is identical with the language used in the statutes of South Dakota, and while we cannot say judicially that our statute on the subject of negotiable paper was in a strict legal sense adopted from the statute of the territory of Dakota, it is true that it is the exact transcript of the Dakota statute, and it would be fair to presume that our legislature in enacting the statute in question had in mind the South Dakota statute on the same subject.

The language of our statute, Statutes of 1893, section 3284, is:

"A negotiable instrument must be made payable in money, only, and without any condition not certain of fulfilment."

Section 3289:

"A negotiable instrument must not contain any other contract than such as is specified in this article."

And we have examined the South Dakota statute and find the language there employed to be exactly the same.

California also has a statute precisely the same as ours. And in the case of *Adams v. Seaman,* 23 Pac. 53, the California supreme court decided that a provision in the note for five per cent. attorney's fees in case of suit, rendered the note non-negotiable on the grounds that it contained a condition not certain of fulfilment.

The supreme court of South Dakota, in *Hegeler v. Comstock,* reported in the 45 N. W. p. 331, held that a provision in the note that the same was to bear interest at ten per cent. per annum, eight per cent. if paid when due, rendered the note non-negotiable. In deciding that case the court says:

"Are the instruments in question sufficiently simple, certain and unconditional to constitute them negotiable under the statute? Are they certain as to intent? The rate of interest is not only uncertain, but depends upon a contingency of prompt or not prompt payment. The instrument must be construed either as meaning, first, that they shall bear ten per cent. interest, but if paid promptly when due only eight per cent. Second, that they shall pay eight per cent. interest, but if not paid promptly when due, ten per cent. There is no certainty until after due as to the amount that will discharge the instrument, the amount depending upon the fact whether paid then or not. This element of uncertainty not conforming to one of the essential requisites of a negotiable instrument, renders them non-negotiable. Our code has defined a negotiable instrument to be a written promise or request for the payment of a certain sum of money to order or bearer, made payable in money only, and without any condition not certain of fulfilment, and it must contain no other contract. The design of the statute is to keep negotiable promissory notes clearly confined within the limits of such paper as required by the law merchant and allowing no outside agreement or collateral understanding to enter into the

main promise. Otherwise these instruments may be lumbered up with all sorts of stipulations which do not properly belong to promissory notes, but to written contracts. Taking both facts into consideration we must hold the instrument upon which this action was founded as non-negotiable."

Now it seems to us that the case at bar and this case decided by the South Dakota supreme court, are identical in principle, as the same uncertainty, as to what, if any, interest is due or will be due at maturity on the note in the case at bar, exists as did in the case before the South Dakota court.

This decision of the supreme court of South Dakota was rendered May 12, 1890, which was prior to the adoption of our code on the same subject. This decision has never been overruled or modified by the court of that state, and, so far as we can ascertain, was the settled and well understood construction of that statute in that state at the time of its adoption by the legislature of this territory.

From a careful consideration of all the authorities, we think the true rule as to negotiable paper is that certainty as to payor and payee, the amount to be paid, and the terms of payment, is an essential quality of a negotiable promissory note, and that it is not sufficient that the amount necessary to liquidate the note on the day when due can be determined, but that certainty must continue until the obligation is discharged.

We take the rule to be well established that where a statute is adopted by the legislature of one state from the statutes of another state or territory, that it is adopted with the construction put upon it by the supreme court of the state or territory from which it is taken prior to its adoption.

This doctrine was recognized by the supreme court of the United States in the case of *Stutzman Co. v. Wallace,* 142 U. S. 312, where Chief Justice Marshall, delivering the opinion of the court uses the following language:

"The known and settled construction of a statute of one state will be regarded as accompanying its adoption by another."

And the same distinguished jurist, in the case of *Elmendorf v. Taylor,* reported in the 10 Wheaton, p. 31, (6 U. S. 361), uses the following language:

"This court has uniformly professed its disposition in cases depending upon the laws of a particular case to adopt the construction which the courts of the state have given to those laws. This course is founded on principle supposed to be universally recognized, that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus no court in the universe which professed to be governed by principle would, we presume, undertake to say that the courts of Great Britain, or of France, or of any other nation, had misunderstood their own statutes and therefore erect itself into a tribunal which should correct such misunderstanding. We receive the construction given by the courts of a nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction than to depart from the words of the statute. On this principle the construction given by this court to the constitution and laws of the United States is received by all as the true construction, and on the same principle the construction given by the courts of the several states to the legislative acts of those states is received as true unless they come in conflict with the constitution, laws or treaties of the United States."

In the case of *McDowell v. Peyton,* 10 Wheaton, 461, the same great jurist reiterates the doctrine, where he says:

"Had it been now for the first time brought before the court for adjudication, it is liable to such great and serious objections that it would most probably be pronounced invalid, but the highest court of Kentucky has already given this decision, and this court has always conformed to that construction of the legislative acts of a state which has been given by its own courts."

And in another early decision which we have not now at hand the same great expounder of our constitution and laws in passing upon the effect to be given to the construction placed upon certain English statutes by the English courts, when such statutes were adopted in this country, says:

"Where statutes are adopted from a foreign country it is presumed that the construction put upon such statutes by the highest courts of that country are in the legislative mind at the time of their adoption, and such construction becomes an integral part of such statute, and should be read into as though written therein."

This rule of construction has been followed by the supreme court of our own territory.

In the case of *Smith et al. v. Baker et al.* reported in 5 Okla. 326, this court says:

"Where the legislature of one state or jurisdiction adopts a statute in force in another jurisdiction which has already received a construction in its courts, it is presumed to adopt the construction thus given."

In the case of *Pittman v. City of El Reno,* 2 Okla. 414, the court says:

34—Vol 12

"The construction placed upon the code by the courts of Indiana prior to its adoption by the legislature of Oklahoma, is also adopted with the statute, and cases tried under the code of Indiana as adopted in Oklahoma will be governed by such construction."

In the case of *City of Guthrie v. Nix, Halsell & Co.,* 3 Okla. 136, the court says:

"Under the code of civil procedure adopted in the Territory of Oklahoma by statutes of 1890, the rule of interpretation and construction applied to that code by the supreme court of Indiana prior to its adoption here will be recognized and applied here by the courts as the settled rules of construction and interpretation to be placed upon the code."

So, it will be seen that this rule has been too long recognized and too well established in this territory to be disturbed, and it seems to us that this rule of construction is a reasonable one. It is not as though one tribunal was making rules of construction to govern another independent tribunal, but the object of all rules of construction is to get at the true intendment and meaning of the legislative act. And when this statute had received a construction by the supreme court of the state of South Dakota, and such construction had become the known and settled construction of the statute of that state, it is fair to presume that the legislature had that construction in mind, and intended to adopt that construction, together with the language of the statute of that state.

This being true, it seems to us that the position of the South Dakota court is controlling in this case, and that the instrument in question is not a negotiable instrument, within the meaning of our law.

This being true, it would be subject to all legal defenses in the hands of the plaintiff in this case. Now, if the matter in controversy had been submitted to a court of competent jurisdiction between the original parties to the note and proceeded to final judgment there, and this final judgment was a bar to the collection of the note, this would constitute a perfect legal defense in the case on trial in the district court, and it seems to us that to exclude such a defense was an unreasonable exercise of judicial discretion and error, for which this cause should be reversed, which is accordingly done, and the cause remanded to the district court with instructions to permit the amendment, and let the case proceed to trial in accordance with the views herein expressed.

Burwell, J., Beauchamp, J., and Gillette, J., concurring; Hainer, J., and Pancoast, J., dissent from paragraphs four and five of the syllabus; Burford, C. J., concurs in the law as stated in the opinion, but dissents from the conclusions reached in this case, and from the application of the law to the facts as stated, and from the result as announced.