BELL, et al. v. RIGGS et ux.

No. 1704.    Opinion Filed June 25. 1912.

Rehearing Denied October 23, 1912.

(127 Pac. 427.)

1.    BROKERS—Agency for Corporation and Person Dealing With It —Procuring Loan.  Scott E. Winne was the active member of the partnership of Winne & Winne, and was also president and manager of the Winne Mortgage Company.  Riggs and wife made application to the Winne Mortgage Company for a loan, and the application contained the statement that Winne & Winne were appointed their agent to obtain the loan.  Riggs and wife signed a separate instrument to the same effect.  Held, that Winne & Winne were in fact acting for the Winne Mortgage Company, and that Riggs and wife were not chargeable with the loan until it has been paid or tendered them, and that a payment of the amount of the loan by the Winne Mortgage Company to Winne & Winne was not a payment to Riggs and wife.

2.    BILLS AND NOTES—Negotiability—What Law Governs. Where a mortgage on land in Oklahoma, given to secure a note payable in Kansas, provided that both note and mortgage should be governed and construed according to the laws of Oklahoma Territory, the question of the negotiability of the note will be determined by the same rule as if it had been both executed and payable in Oklahoma Territory.

3.    SAME—Note Becoming Due on Default.  A note executed in 1905, otherwise negotiable in form, contained the following clause: "Interest coupons are hereto attached representing the interest from date to maturity, which with this principal note are secured by a mortgage deed of even date.  If any installment of interest be not paid at maturity, this principal note and all

interest due thereon shall become due and payable at. once, without notice, at the option of the holder of this note. This note is executed upon the condition that partial payments in any amount not exceeding one-fifth of the principal in any one year, will be received at any time, at the office of said company in Wichita, Kansas, and that the interest will be rebated from the date of such payments." **Held,** that this clause rendered the note nonnegotiable.

4.   **TENDER**—Sufficiency—Amount.   According to the loan contract, the first installment of interest was due March 1st. The loan company tendered a check for the amount of the loan to the borrower February 14th, less the interest due March 1st, amounting to $5,46. **Held,** that the loan company had no right to withhold the interest not due, and that the tender was not sufficient.

(Syllabus by Rosser, C.)

*Error from District Court, Kiowa County;*
*James R. Tolbert, Judge.*

Action by Daniel A. Riggs and Jennie Riggs against the Winne Mortgage Company, M. Pauline Bell, and James B. Bell. Judgment for plaintiffs, and defendants, M. Pauline Bell and James B. Bell, bring error. Affirmed.

*Thornton W. Sargent* and *W. D. Walton,* for plaintiffs in error.

*Keys & Rummons* and *Chas. Mitschrich,* for defendants in error.

Opinion by ROSSER, C.   This is a suit by Daniel A. Riggs and Jennie Riggs against the Winne Mortgage Company, M. Pauline Bell, and James B. Bell, in which plaintiffs seek to cancel a mortgage for $1,560 on certain lands described in the petition. On the 3d day of January, 1905, the plaintiffs made application to the Winne Mortgage Company of Wichita, Kan., for a loan of $1,560 for ten years, at 10 per cent. interest, payable annually from the 1st day of March following, offering as security the land described in the petition. The application was made through the local agent of Winne & Winne at Lawton, Mr. O. P. M. Butler. The application contained the following paragraph:

"I hereby constitute and appoint Winne & Winne, of Wichita, Kansas, my agents to procure the necessary abstract of title to the land, and to show a clear and unincumbered title in fee

simple thereof, at my expense, and to charge me for the same, and at my expense to pay off all liens on said land, and to send the money or draft to make such payments at my risk. I hereby authorize them to procure the loan herein applied for, from the company to which this application is made, or from any other source from which they can get this sum herein applied for."

Winne & Winne was a partnership, and Scott E. Winne, the active member of the partnership, was also president of the Winne Mortgage Company, and apparently its general manager, having general control of its business. In a separate contract the plaintiffs agreed to pay Winne & Winne $360 out of the loan as commission or compensation for securing the loan. On the 6th day of January Butler took the note and mortgage to plaintiffs' residence, and at the same time took plaintiff Daniel A. Riggs a check from Winne & Winne for the sum of $360, and had Riggs indorse the check. The check was then returned to Butler, who returned it to the company as a voucher for the commission. Riggs did not seem to understand why it was necessary for him to indorse the check, upon which he did not receive the money, but he finally indorsed it. It must be admitted that there was some reasonable ground for his curiosity along this line. The check was in the following form:

"Pay to the order of Daniel Riggs three hundred sixty and no-100 dollars to the National Bank of Wichita, Wichita, Kansas. Winne & Winne."

No notary qualified to take the acknowledgment was available on the 6th of January, but on the 10th of January a man named Logan took the acknowledgment. The mortgage provided that it and the note it secured should be construed and governed by the laws of Oklahoma Territory. The mortgage was put on record, and mailed to the company. There was a conflict in the testimony as to when the money was to be advanced upon the loan, with reference to the delivery of the mortgage. The plaintiffs testified that the understanding when they delivered the mortgage to be recorded was that the money was to be paid as soon as the mortgage was recorded. Butler denies this. He testified that the money was not to be paid until final proof was made upon the land described in the mortgage, and that it was

then to be paid by check. After the mortgage left plaintiffs' hands they seemed to get uneasy about the matter, and on the 7th day of February they drew on the Winne Mortgage Company for the amount of the loan, but the draft was not paid. There was testimony to the effect that at that time the final proof had not reached Washington, D. C., or, if it had, the title had not been perfected from the government to the plaintiff Daniel A. Riggs. It also appeared from the evidence that the company did not advance loans through drafts, but that they always paid by check. On the 13th of February, Winne & Winne drew a check payable to Daniel A. Riggs for $1,184.44, and sent it to Butler, their agent, and Butler went to Riggs' home, and told him that he had a check for the loan. The amount of $1,184.44 was arrived at by deducting from the amount of the loan $360 commission, $2.70 abstract fees, $2.90 recording fees, $3 attorney fees, $1.50 for recording patent, and $5.46 interest from February 14 to March 1, 1905. Riggs replied that he had drawn a draft which the company had turned down, and he was not going to take the loan. He also stated that the amount of the check was not right; that the interest from the 14th of February to March 1st was improperly deducted. Riggs also said that the check was not good. Butler then offered to go with Riggs to Snyder or Lawton and get the money on the check, but Riggs declined to go. After the draft drawn on the 7th of February was refused, Riggs consulted some attorneys about canceling the mortgage, and had been at an expense with reference to that which Butler offered to pay if Riggs would go with him to where the check could be cashed, but Riggs refused to go and refused the check. On the 23d of February, 1905, the plaintiff brought suit against the Winne Mortgage Company to cancel the mortgage, and had publication notice served.

The note is in the following form:

$1,560.00. Hobart, Oklahoma Ter., Jan. 6, 1905. Ten years after date, for value received, I promise to pay to the order of the Winne Mortgage Company fifteen hundred sixty & no-100 ($1,560.00) dollars, at the office of the said company, in Wichita, Kansas, with interest at the rate of 7 per centum per annum from date until paid, payable annually on March first of

each year, excepting the last installment, which shall be due and payable with the principal. If this note is sent to the *Farmers' & Merchants' Bank at Snyder, Oklahoma Territory,* or to any other bank, for collection, I agree to pay exchange and collection expenses, and this note shall not be deemed paid until the funds are actually received by the payee. Interest coupons are hereto attached representing the interest from date to maturity, which with this principal note are secured by a mortgage deed of even date. If any installment of interest be not paid at maturity, this principal note and all interest due thereon shall become due and payable at once, without notice, at the option of the holder of this note. This note is executed upon the condition that the partial payments in any amount not exceeding one-fifth of the principal in any one year, will be received at any time, at the office of said company, in Wichita, Kansas, and that the interest will be rebated from the date of such payment. —————————. Daniel A. Riggs. Jennie Riggs. Post-office address: Snyder, O. T. No. F. 2585."

The notes and mortgage were transferred to M. Pauline Bell about the time the suit was brought. Dr. Jas. B. Bell acted as the agent of M. Pauline Bell in purchasing the note and mortgage. He testified that on the 24th of February he received a letter from Jas. A. Laighton, who was the New England manager of the Winne Mortgage Company, asking him to mail him check for the amount of the notes, which the mortgage in controversy was given to secure, and that he gave Mr. Laighton a check which was paid, and he received the notes and mortgages as agent for his wife, M. Pauline Bell. Dr. Bell testified that at the time he bought the note and mortgage he had no knowledge or intimation that the money had not been advanced upon the loan, and did not know that a suit was pending to cancel the mortgage. The Winne Mortgage Company executed the following assignment of the mortgage:

"Wichita, Kansas, February 17, 1905. For value received, we hereby assign the within bond to M. Pauline Bell, or order, without recourse, upon a six per cent. basis, reserving all interest collected from the borrower in excess of the above rate. It is especially agreed that all interest collected by us in excess of the above rate shall be retained as our exclusive property, and if the owner or holder of this bond and coupon notes attached shall collect the interest through local banks or otherwise, such

holder or owner shall remit to us at once upon such collection being made as aforesaid, all sums collected in excess of six per cent.; but the payments of said excess shall be postponed until said owner or holder shall first receive payment of all interest due. Signed and delivered this 17th day of February, 1905. The Winne Mortgage Company, By Scott E. Winne, President. Loan No. F. 2583."

The Winne Mortgage Company paid the interest to M. Pauline Bell regularly for three years, and then went into the hands of a receiver. The plaintiffs have never received any money on the mortgage. At the time the check was offered plaintiffs, Winne & Winne had funds in the bank upon which it was drawn sufficient to pay it, and they were at that time a going concern and considered solvent. The suit brought February 23, 1905, was dismissed pending negotiations looking to a settlement, and the present suit was brought after the negotiations failed. There was a decree in the district court cancelling the mortgage, and the defendants M. Pauline Bell and James B. Bell have brought the case here for review.

The defendants urge a number of grounds for reversal. Their first proposition is as follows: When the Winne Mortgage Company approved the application of Daniel A. Riggs and Jennie Riggs for the loan, and promised to make it, a contract was thereby made which Riggs and wife could not rescind. This, as a bare proposition, is unquestionably true. They could not rescind unless there was default or misconduct on the part of the Winne Mortgage Company.

The second proposition is as follows: "Riggs actually received the money for his mortgage." It is the contention of defendants that Winne & Winne were agents of plaintiff for the purpose of obtaining the loan, and that the money reached Winne & Winne, and that as they received it their principal was charged with it. The application for the loan was made on a printed form and begins: "I, Daniel A. Riggs, of Snyder, O. T., hereby make application to the Winne Mortgage Co., Wichita, Kansas." Then follows a number of paragraphs containing the details of the contract. In the thirtieth paragraph is the first reference to

Winne & Winne.   The paragraph contains the following provision:

"I hereby agree to refund to Winne & Winne all expenses which they shall necessarily incur in the procuring of this loan, out of the money comprising this loan, when the same shall be obtained and in case of my refusal or failure to accept the loan or to furnish a perfect record abstract of title, as above provided or in case the security or title shall not be found as represented, the whole commission agreed to be paid by me to Winne & Winne shall be considered as earned, and immediately due and payable, and I hereby agree to pay the said sum in full."

The thirty-first paragraph appoints Winne & Winne agents. February 21, 1905, the Winne Mortgage Company drew a draft on James A. Laighton, payable to the order of Winne & Winne, which was deposited to the credit of Winne & Winne in the Jackson Trust & Savings Bank of Chicago, Ill., and was afterwards checked out by them.   Scott E. Winne was the manager of both the Winne Mortgage Company and Winne & Winne.   How can it be said that he can be the agent of the borrower to borrow moneys from the company of which he was the managing agent? Will the law countenance a contract by which John Doe, the cashier of a bank, goes out and makes a contract with a borrower to act as broker in getting a loan from the bank?   If, after he has made such a contract, he goes back behind the counter and credits himself as such broker with the amount of the loan, will the law say that the borrower has received the money?   That is nearly the same as this case.   The only difference is that Scott E. Winne appears to have had a partner on the brokerage side of the counter, though a very silent partner.   It should not require argument or authority to show that Winne & Winne were practicing a species of financial juggling.   There is high authority for the proposition that no man can serve two masters.   Who can doubt that in this case Winne & Winne held to the Winne Mortgage Company, and disregarded, if they did not despise, the interests of Riggs.   See *Leathers v. Canfield,* 117 Mich. 277, 75 N. W. 612, 45 L. R. A. 33, and authorities there cited.   Hughes, Grounds and Rudiments of Law, 578.   Scott E. Winne was the manager of the Winne Mortgage Company.   That company dealt and made

contracts through him as its manager. He also transacted the business of the Winne Mortgage Company. The essence of the so-called agency contract was that Scott E. Winne was employed to obtain a loan from himself. The law does not countenance such nonsense, no matter how it may be hedged about with formalities or dignified with names.

*McLean v. Ficke,* 94 Iowa, 283, 62 N. W. 753, was a suit to cancel mortgages in which the facts are similar to the case at bar. In that case there was an application appointing a certain person the agent of the borrower. This so-called agent received the money and embezzled it. In holding the statements of the application as to the agency to be untrue, the court said:

"We do not deem that statement in the application as of controlling importance in determining the main question as to whether or not in receiving the money Coleman was acting for McLean. If, however, we are concluded by the statement in the application, wherein it is stated that McLean appointed Coleman as his agent to receive the money, then plaintiff cannot recover. We think it is clear that in determining this question of agency we are not absolutely bound by this statement. We have no doubt that in any case of contract between parties it is not only within the province of the court, but clearly its duty, to go behind the technical wording of the instrument, and from the entire evidence in the case determine as a matter of fact and law the question of agency. Can the parties to a contract irrevocably fix the status of a third party in his relation to them by denominating him an agent for one of them, if the facts and circumstances disclosed in the record unmistakably show that such named relation was a fiction—was untrue in fact? If they can say, then courts are powerless to determine and give effect to the actual contracts of parties, and, in effect, the courts would be bound by a mere form, while the substance, the reality, would be subordinated to that which was in fact unreal and untrue. The mere use of the word 'agent,' as thus applied by parties in their contract, cannot be held to have the effect to make one an agent who, in view of the law under the evidence, is not such. A legal relation of one to another is not the fruit of a name, but is to be determined from all of the evidence in the case. Merely calling one an agent for one party, even in a contract, does not of necessity make him such. The question is, In view of all the facts disclosed in the record, what relation, under the law, did Coleman sustain to those parties? Parties may in a contract solemnly

declare that the doing of certain acts therein provided shall be deemed conditions precedent, but that does not preclude the courts from determining whether in fact they are such conditions. *Jones v. Association,* 92 Iowa, 652, 61 N. W. 485. If the facts show that the declaration of agency in the application was put there to aid the lender in escaping a legal liability, and the acts of the parties show that in receiving Ficke's money Coleman did in fact act as Ficke's agent, the nominal statement cannot be held to control the real facts, which are inconsistent therewith.    As is well said in *Insurance Co. v. Ives,* 56 Ill. 420 :    'There is no magic power residing in the words of the stipulation to transmit the real into the unreal.    A device of mere words cannot, in a case like this, be imposed upon the view of a court of justice in place of an actuality of fact, and make the company and its agents the agents of the appellee.'    This is as applicable to the case at bar as to an insurance case.    Without further extending this discussion of the power of the court to look behind the mere words used and ascertain the facts, the right so to do has frequently been upheld.    *South Bend Toy Mfg. Co. v. Dakota Fire & Marine Ins. Co.,* 2 S. D. 17, 48 N. W. 310; *Larson v. Investment Co.,* 51 Minn. 141, 53 N. W. 179; *Jensen v. Investment Co.,* 39 Neb. 371, 58 N. W. 100; *Banks v. Flint,* 54 Ark. 40, 14 S. W. 769, and in 16 S. W. 477 [10 L. R. A. 459].    And see *Jamison v. Insurance Co.,* 85 Iowa, 229, 52 N. W. 185.''

See, also, *New England Mtg. Security Co. v. Addison,* 15 Neb. 335, 18 N. W. 76; *Bates v. American Mortgage Co.,* 37 S. C. 88, 16 S. E. 883, 21 L. R. A. 340; *Travelers' Ins. Co. v. Jones,* 16 Colo. 515, 27 Pac. 807.    The same principle has been applied to applications for insurance in *Sullivan v. Phoenix Insurance Co.,* 34 Kan. 170, 8 Pac. 112; *Planters' Insurance Co. v. Myers,* 55 Miss. 479, 30 Am. Rep. 521; *Ellenberger v. Protective Mut. Fire Ins. Co.,* 89 Pa. 464; *Gans v. St. Paul F. & M. Ins. Co.,* 43 Wis. 108, 28 Am. Rep. 535; *Sprague v. Holland Purchase Ins. Co.,* 69 N. Y. 128; *Columbia Ins. Co. v. Cooper,* 50 Pa. 331; *Boetcher v. Hawkeye Ins. Co.,* 47 Iowa, 253.

It is true the courts have held, whether correctly or not is not determined here, that the same person can be the agent of both borrower and lender for different purposes in connection with the loan.    Certainly the proof should be clear that would permit the same man to be agent of both parties.    It is hardly in human nature for him to serve both sides with the same zeal

and fidelity.   But no case has been cited or found holding that the borrower can appoint the lender or managing officer of the lender his agent.   That was what was attempted here.   The cases holding that the same person can act as agent for both borrower and lender proceed upon the theory that he is only interested on behalf of the lender in those matters concerning which he was employed, and that as to other matters he would have no interest that would prevent him from representing the borrower.   But that is not true in this case.   Scott E. Winne, as managing officer of the Winne Mortgage Company, had an interest adverse to the Riggs of which he could not divest himself.   It is a principle running through the law that a man cannot act in a matter in which his duty and his interest conflict.   A judge cannot sit in his own cause.   A guardian cannot purchase the property of his wards.   An agent cannot make a profit for himself out of the subject-matter of the agency.

The next question is as to the negotiability of the note.   It is contended by defendants that the note should be governed by the laws of the state of Kansas, and that by the law of Kansas the note was negotiable.   Plaintiffs contend that the note should be governed by the law in force in Oklahoma Territory at the time it was made, and that by that law it was not negotiable.   They further contend that it was not negotiable under the laws of Kansas, and, if negotiable under any law, that defendants do not hold it as innocent purchasers of commercial paper because under the assignment from the Winne Mortgage Company they did not get a full title.   The contract of the parties, as contained in the mortgage, provided that both note and mortgage should be governed by the laws of Oklahoma Territory.   A contract of this sort is valid, and will be enforced in the courts, unless to give it effect would violate the public policy of the state of the forum with reference to the matter contracted about.   *McAlister v. Smith*, 17 Ill. 328, 65 Am. Dec. 651; *Union Cent. Life Ins. Co. v. Pollard*, 94 Va. 146, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715; *Greer v. Poole*, 5 Q. B. D. 272.   See Wharton, Conf. Laws (3d Ed.) 920.   Defendants contend that as the note was payable in Wichita, Kan., the law of Oklahoma would interpret

it according to the law of Kansas, and that the contract of the parties that it was to be governed by the law of Oklahoma really meant it was to be governed by the law of Kansas. This argument, if plausible, is certainly not more than plausible. The note provided that, if any interest coupon should not be paid at maturity, the note with interest should immediately become due and payable, at the option of the holder. It further provided that partial payments of not more than one-fifth in any one year would be received by the company at any time, and that interest would be rebated from the date of the payment.

In *Randolph v. Hudson,* 12 Okla. 516, 74 Pac. 946, Justice Irwin said:

"From a careful consideration of all the authorities, we think the true rule as to negotiable paper is that certainty as to payor and payee, the amount to be paid, and the terms of payment is an essential quality of a negotiable promissory note, and that it is not sufficient that the amount necessary to liquidate the note on the day when due can be determined, but that certainty must continue until the obligation is discharged."

This decision followed *Hegler v. Comstock,* 1 S. D. 138, 45 N. W. 331, 8 L. R. A. 393, and has remained the rule in Oklahoma as well as South Dakota and California, in both of which states the statute was the same as was the statute of Oklahoma at the time the note was given. In *Merrill v. Hurley,* 6 S. D. 592, 62 N. W. 958, 55 Am. St. Rep. 859, the court said:

"This court has placed itself in line with a class of authorities which require such a degree of certainty that the exact amount to become due and payable at any future time is clearly ascertainable at the date of the note, uninfluenced by any condition not certain of fulfillment."

In the case of *Farmers' Loan & Trust Co. v. McCoy & Spivey Bros.,* 32 Okla. 277, 122 Pac. 125, in which Sharp, C., rendered the opinion, a note somewhat similar to the one in suit here was under consideration, and the doctrine of the South Dakota cases was followed. It is not necessary to review the authorities upon the question so lately before this court. In addition to the cases to which reference has been made, it is sufficient to refer to *Clevenger v. Lewis,* 20 Okla. 837, 95 Pac. 230, 16 L. R. A. (N. S.) 410, 16 Ann. Cas. 56; *Clowers v. Snowden,*

21 Okla. 476, 96 Pac. 596; *Cotton v. John Deere Plow Co.,* 14 Okla. 605, 78 Pac. 321. From a study of these and other cases which they refer to it will be seen that they support the rule in *Randolph v. Hudson,* 12 Okla. 516, 74 Pac. 946. Stated in another way, that rule is that if the date when due or the amount to be due depend upon conditions uncertain of fulfillment, and cannot be determined from the face of the note itself at the time of its execution without reference to extraneous circumstances, the note is not negotiable. Applying that rule, it is clear that the note now under consideration was not a negotiable instrument, because the time when it was due depended on whether the interest was regularly paid, and whether the holder exercised his option to declare it due. Further, the maker had the right to pay one-fifth every year, and stop the interest as to that much, though, if the interest was paid, the one-fifth he might have paid was not overdue. The date of the note must be borne in mind. No opinion is expressed as to the effect of such a provision since the passage of the negotiable instruments act.

It is not necessary to decide the question as to whether the reservation of a portion of the interest in the written assignment from the Winne Mortgage Company to M. Pauline Bell subjected the note to defenses in her hands. Without deciding the question, it is not improper to say that the authorities seem to hold that, to cut off the maker from making the same defenses against the indorsee he had against the payee, the entire interest and property in the note must be transferred. *Goldman v. Blum,* 58 Tex. 630.

Defendants contend that the money was tendered to Riggs and wife, and that thereby their liability was fixed. If true, this presents a serious question. But was it tendered? Leaving out of consideration the fact that the offer of payment was made by check and not in money, was the check for a sufficient sum? The check was for $1,184.44. In arriving at the amount of $1,184.44, for which the check was drawn, several items were deducted from the face of the loan; among others, $5.46 interest from February 14 to March 1, 1905. This interest was not due. If interest could be held out of the loan for two weeks before it was due,

why could it not be withheld for two years? Five dollars and forty-six cents is not a large sum, but it might be worth a great deal under some circumstances. Riggs and wife were as much entitled to the $5.46 withheld for the two weeks next following the alleged tender, as they were to any other part of the loan. The fact that the amount withheld was small does not affect the question. *Boyden v. Moore,* 5 Mass. 365; *Wright v. Behrens,* 39 N. J. Law, 413. A tender to be good must be of the entire sum due. 38 Cyc. 137.

There are other questions raised in the briefs of counsel, but, with the disposition that has been made of those decided, the other questions are not material.

The judgment of the lower court should be affirmed.

By the Court: It is so ordered.