# Miles B. Miller v. Hugh Finley, Jr., and another.

*Promissory note: Consideration: Patent-right: Evidence: Plea: Fraud: Misrepresentation.* A note given for an interest in a patent issued by the United States patent office cannot be regarded as without consideration, and evidence of the pecuniary worthlessness of the patent is not admissible under the general issue. Any defense arising out of fraud or misrepresentation must be specially pleaded.

*Promissory note: Alteration: Surety: Maker.* The principal maker of a note is not injured in any way by having the name of a surety added without his consent, and such addition does not invalidate the note.

*Promissory note: Maker: Incapacity: Intoxication. Bona fide purchaser.* Where a note is signed by a person who, if intoxicated, was yet aware of what he was doing, and not deceived as to the identity of the paper signed, it is not void, and any defense to it must rest on fraud, and not on absolute incapacity; such a note would be valid in the hands of an honest holder for value.

*Bona fide purchaser: Fraud will not be presumed.* A person who pays value is to be regarded as a rightful holder, unless he is shown to have had such knowledge as would make him guilty of bad faith; and the facts brought home to him must be such as show the defects of title. Fraud cannot be presumed without proof.

*Notice that a note was given for a patent-right.* Knowledge that a note was given for a patent right is not enough to raise any suspicion of its validity.

*Submitted on briefs October 31.    Decided November 23.*

Error to Kalamazoo Circuit.

26 MICH.—32.

*May & Buck,* for plaintiff in error.

*J. W. Breese* and *H. F. Severens,* for defendants in error.

CAMPBELL, J.

Miller sued below upon a joint and several promissory note. Both defendants pleaded the general issue, and Hugh Finley, junior, appended to his plea an affidavit denying the execution of the note by himself. No notice of any kind, was filed or served with the plea.

Upon the trial the defense was rested upon several grounds. It was claimed that Hugh Finley, senior, signed the note without the consent of Hugh Finley, junior, his son, who, it was alleged, refused to assent to having him sign, and after the note had been delivered as the sole note of the son. It was further claimed that when he signed it, he was in such a state of drunkenness, procured by the original payee, that he was not responsible for his acts. It was also set up, that the note was one of several obtained by fraud, as the price of a worthless patent, for a horse-collar fastener.

Miller claimed as a *bona fide* holder. Judgment was rendered for defendants below, and he now brings error.

The whole testimony given in the court below, concerning the character of the patent-right, was, we think, wrongly admitted. There was no question concerning the transfer of the patent-right, and such a right is a right of property. Its value being incapable of reduction to any fixed sum, and being altogether a matter of opinion, any price agreed upon, unless manifestly exorbitant, would be enforced, in the absence of fraud and misrepresentation. A note given for the price cannot be regarded as a note given without consideration; and any defense arising out of such circumstances must be specially pleaded, and cannot be shown

without notice. All the testimony admitted for the purpose of showing the worthlessness of the patented invention, was therefore irrelevant, and it was error to admit it.

It is also claimed by plaintiff in error, that the alteration in the note, whereby Hugh Finley, senior, became a party to it was not, as to the original signer, a material alteration. There is no doubt that any material alteration in a note, without the consent of the party responsible on it, and affected by it, will destroy it as to him.— *Wait v. Pomeroy, 20 Mich. R., 425; Holmes v. Trumper, 22 Mich. R., 427; People v. Brown, 2 Doug. R., 9.* And there can be no question but that an addition to the number of signers of an instrument may in some cases, at least, affect the operation of it, as to some or all of those who have already signed.

The doctrine is settled in New York, that procuring the signature of a party, whose name was not originally on a note, is not necessarily material as to the first signers. In *Muir v. Demaree, 12 Wend., 468,* where holders, in order to get a note discounted, signed their own names as makers, in addition to the rest,—the note being joint and several,—and afterwards paid it, they were held to have lost no rights, and to be authorized to sue it themselves, or transfer it to others. In *McCaughey v. Smith, 27 N. Y., 39,* where holders, without an endorser's knowledge or consent, procured a second name to a sole note, for the purpose of adding to their security, it was held not to be such an alteration as affected the endorser. A similar principle was recognized in *Brownell v. Winnie, 29 N. Y., 400.* There are some decisions bearing more or less on both sides, in other states. Only two English decisions bearing upon the question directly, have been cited. In *Catton v. Simpson, 8 Ad. & El., 136,* it was held that an additional party signing with-

out a new stamp was not bound by his signature, and that the alteration, therefore, was not material. In that case the original note was signed by a principal and surety, jointly and severally, and the new name was procured by the principal for an extension of time. The original surety paid the note, and sued his principal for the money paid to his use. The principal defended, on the ground that the payment was voluntary, because the surety had been dis-charged by the alteration, and had no right to pay the note; but his defense was rejected.

In *Gardner v. Walsh, 5 El. & Bl., 83,* a principal and surety made a joint and several promissory note, and a second surety was added without the knowledge or consent of the first. A several action was brought against the first surety, who was held discharged by the alteration; and the court expressed an opinion that the former decision was not law.

· In the recent case of *Aldous v. Cornwell, L. R., 3 Q. B., 573, Catton v. Simpson* is cited as authority on the point that an alteration will not vitiate unless material; and the case of *Gardner v. Walsh* was referred to, merely to say, that it only overruled the former case on the question whether such an alteration as that passed upon was material. *Aldous v. Cornwell* is somewhat pointed in condemning the early decisions which paid no attention to the materiality of alterations. And the doctrine that immaterial altera-tions should not be regarded, is too well based on good sense to be overthrown.

The addition of a surety was not, in either of those cases, held to discharge a principal. It has always been competent for a person to become surety by signing the note of the principal, so as to become a joint and several maker. There is no rule which requires that a contract

of suretyship must be cotemporaneous with the principal obligation.    And unless the principal's liability is in some way affected by the addition, it cannot be material.

It is very difficult to see how such a change can affect him in any but a mere technicality, which neither changes, increases, nor diminishes his liability.    Where there is no surety, the principal is liable to be sued severally, and made to pay the whole debt, if he has any property liable to execution.    His liability on a joint judgment is precisely the same.    His property is primarily liable, and if he has enough to pay the judgment, and it is paid by him, or out of his property, he has no further concern with the surety, as he can have no right of contribution for his own debt.    The fact that he may not pay, does not in any way affect the nature or extent of his judgment obligation. A surety may, perhaps, in some cases, be injuriously affected by an addition to the number of sureties, where there is more than one already; as, in case of the bankruptcy of any of them, his obligation to pay may be increased, and his right of contribution against co-sureties diminished, by the change.    But, as the principal is bound to pay the whole debt without contribution, his liability cannot possibly be changed by the addition of sureties.

We think, therefore, that the original maker of the note could not complain of the procurement of his father's signature, and that he could not be discharged thereby.

This being so, and Hugh Finley, senior, not having denied the execution of the note, and not having set up any special matter in defense, the question of joint liability is made to depend entirely on such defense as may properly be set up to discharge him under the general issue, aside from the fact of signature and delivery.

The testimony of defendants tended to prove that the elder Finley knew nothing of the trade, and was drunk

when he signed the note, and that the payee had wholly, or in part, procured it. The testimony for plaintiff tended to show that the old man was fully aware of the transaction between his son and the payee, and took some part in it. The evidence of the son does not indicate any extreme intoxication on the part of the father. His own testimony goes further. He seems, however, to have recollected the signing, and its genuineness is not in issue. There is no question in the case as to the identity of the paper. The note he signed was the one the son supposed he was signing, and there was no substitution of one paper for another. The defense rests upon the ground of fraud, and not of illegality, and while, if the old man's story is true, the note would be voidable as against the payee, it would not be a nullity as to all persons.

There is nothing on the face of the paper to cast suspicion upon its character, and it can only be impeached, in the hands of a holder for value, by evidence that he took it under circumstances which rendered him guilty of bad faith.—*Goodman v. Simonds, 20 How., 343 ; Murray v. Lardner, 2 Wallace R., 110; Goodman v. Harvey, 4 Ad. & El., 870; Uther v. Rich, 10 Ad. & El., 784; 2 Parsons on Bills, 280; Redfield & Bigelow's Leading Cases on Bills and Notes, 239, 257.*

The proof must show that the holder for value, who takes a note with no earmarks of fraud or illegality, has had notice of such a nature that he could not honestly take the paper without further inquiry. The facts of which he must have either knowledge or notice, must be such as go to the defects of title. The defect set up here, were the fraud alleged to have been practiced on the elder Finley, by taking advantage of his drunkenness, and the cheat, if there was any, whereby the younger Finley was induced to purchase the patent. The latter we have intimated was not properly in the

case. But if it had been admissible, it would, perhaps, be of no special importance, as presented by the record as it stands. We have found nothing in the testimony tending to show that Miller had heard or known any thing about either of these defenses. The court declined to instruct the jury that notice that the note was given for a patent-right would not be sufficient to charge plaintiff. Whatever may have been the experience of our people with itinerant patent-venders, it cannot properly be assumed as a fact that a patent, regularly issued by the department, lacks either novelty or utility. And, as fraud can never be presumed without proof, the jury could not properly be charged upon any theory supported by no evidence at all.

These points were evidently subordinated to the other legal propositions, and it was probably not deemed necessary to criticise them very closely, when the case was made to turn chiefly upon the other rulings.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.