BRACKEN *et al.* v. FIDELITY TRUST CO.

No. 3278.    Opinion Filed May 12, 1914.

(141 Pac. 6.)

1.    **BILLS AND NOTES—Negotiability.**    Under sections 3592, 3593, Wilson's Rev. & Ann. St. 1903, of Oklahoma, a note dated January 12, 1906, containing the following provision:    "With interest at six per cent. per annum before maturity, and thereafter with interest at ten per cent. per annum until paid; interest payable with note"—was a nonnegotiable note, and, though in the hands of a purchaser before maturity, was subject to every legal defense which could have been interposed against it in the hands of the original payee.

2.    **SALES—Horses—Express Warranty—Breach—Refedies of Buyer.**    The seller of a horse gave the following guarantee:    "If the above-named stallion does not get sixty per cent. of the producing mares with foal with proper care and handling, we agree to replace him with another stallion of the same price and quality upon delivery to us of said stallion in as sound and good condition as he is at present."    **Held,** by the terms of this warranty, the purchasers did not obligate themselves to accept another horse in case of breach of such warranty, but, upon a breach of same, they had the option to either accept another or retain the horse and sue for damages sustained by the breach, or to return him and rescind the contract.

(Syllabus by Harrison, C.)

*Error from District Court, Kiowa County;*

*James R. Tolbert, Judge.*

Action by the Fidelity Trust Company against Solon Bracken and others.    Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*O. B. Riegel, Hays, Carpenter & Hughes,* and *J. E. Terral,* for plaintiffs in error.

*Morse & Standeven* and *W. A. Phelps,* for defendant in error.

Opinion by HARRISON, C.    This was an action by the Fidelity Trust Company against Solon Bracken and others to recover on a promissory note.    The note in question was executed

by the makers as a part payment for a certain Percheron stallion, which the makers of the note had purchased from McLaughlin Bros. at an agreed price of $3,600; the note being as follows:
$1,200.00.

"Mountain Park, O. T., Jan. 12, 1906.

"Oct. 1st, 1908, after date, for value received, we jointly and severally promise to pay McLaughlin Bros., or order, twelve hundred dollars at the Citizens' Bank, Mountain Park, O. T., with interest at six per cent. per annum before maturity, and thereafter with interest at ten per cent. per annum until paid; interest payable with note."

Plaintiff alleged that before maturity of the note it purchased same from McLaughlin Bros. for a valuable consideration, and that it was then the owner and holder thereof, and that defendants had refused payment.

Defendants answered, pleading a failure of consideration, in that the stallion was worthless as a breeder, that he did not come up to the guaranty which McLaughlin Bros. had made to them, and that therefore the note was without consideration. They further alleged that the horse had been returned to McLaughlin Bros. at Kansas City, Mo., in as good condition as when received by them. The guaranty in question, which was made a part of the bill of sale, and which defendants alleged the horse did not come up to, is as follows:

"Guarantee: If the above-named stallion does not get sixty per cent. of the producing mares with foal with proper care and handling, we agree to replace him with another stallion of the same price and quality upon delivery to us of said stallion in as sound and good condition as he is at present. Mares bred with impregnator properly used, the percentage is the same as stallion.

"In the event of the above-named stallion's death any time before the end of four breeding seasons, upon our being notified, we agree to replace him with another stallion of the same price for the sum of one thousand dollars ($1,000) cash, we to pay the freight.

"This is the only contract, representation, or guarantee given by us, and it is not to be changed or varied by any promise or representation of the agent.  McLaughlin Brothers, by H. H. Wilson, Agent.  R. L. Roberts."

The cause was tried by the court, and judgment rendered in favor of plaintiff, to reverse which defendants appeal to this court.

Two propositions are urged for reversal: First. That the note was nonnegotiable, and therefore subject to all the legal defenses in the hands of a purchaser before maturity that it might have been subject to in the hands of the original payee. Second. That, upon a breach of the warranty that the stallion was a 60 per cent. foal-getter, the defendants were entitled to rescind the contract of sale by returning the stallion to McLaughlin Bros., and to defend against the nonnegotiable note for failure of consideration.

The two propositions are interlaced, that is, dependent upon each other, and should be considered in conjunction with each other in determining defendants' right of defense against the note in the hands of the purchaser before maturity. There is no dispute but that the horse was not up to the warranty. The record discloses that, for the year 1906, eleven colts were obtained from 64 mares, and, for the season of 1907, twelve colts from 51 mares. The gist of defendants' right of defense, therefore, lies in the question of nonnegotiability of the note and their option to rescind the contract upon breach of warranty. The note provides:

" * * * With interest at six per cent. per annum before maturity, and thereafter with interest at ten per cent. per annum until paid; interest payable with note."

It must be observed that in this clause no definite time is fixed for payment. It is true October 1, 1908, was fixed as the date of maturity of the note, and but for the latter clause would definitely fix the date on which the makers were jointly and severally obligated to pay same. But the latter clause leaves it optional with the makers whether they pay it on date of maturity or continue it indefinitely thereafter, at the rate of 10 per cent. per annum. The time for payment being thus indefinite, it follows that, at the time it was purchased, the amount to be paid thereon was not only inaccurate of ascertainment, but impossible of ascertainment. This note, let it be observed, was made

January 12, 1906. At that time chapter 54, Wilson's Rev. & Ann. St. 1903, was in force. Sections 3592, 3593, are as follows:

"(3592) A negotiable instrument is a written promise or request for the payment of a certain sum of money, to order or bearer.

"(3593) A negotiable instrument must be made payable in money only, and without any condition not certain of fulfillment."

In *Randolph v. Hudson*, 12 Okla. 516, 74 Pac. 946, the court held:

"Under the Code of this territory a note in the following language: '$275.00. Enid, O. T. May 15, 1894. Thirty days after date I promise to pay to the order of J. H. Thomas two hundred and seventy-five ($275.00) dollars, with interest at the rate of twelve per cent. from date if not paid at maturity * * *' —is not a negotiable instrument, and is subject to the same defense it would be in the hands of the original payee. * * *"

In *Cotton v. John Deere Plow Co.*, 14 Okla. 605, 78 Pac. 321, it was held:

"A promissory note which contains the following stipulation in relation to attorney's fees, to wit: 'It is stipulated by the parties to this note that, in event the same is collected by an attorney, or by any proceeding at law, an attorney's fee consisting of $10.00 and ten per cent. of the amount so collected shall be paid by the makers hereof to the holder of same'—destroys the negotiable character of the instrument, and thereby makes it non-negotiable."

In *Clevenger v. Lewis*, 20 Okla. 843, 95 Pac. 232, 16 L. R. A. (N. S.) 410, 16 Ann. Cas. 56, this court, in an opinion by Williams, C. J., said:

"The note upon which this action is based, containing a provision for a reasonable attorney's fee, if collected by suit, is not negotiable."

—citing *Randolph v. Hudson*, and *Cotton v. John Deere Plow Co., supra.*

Again, in *Farmers' Nat. Bk. of Tecumseh v. McCall*, 25 Okla. 600, 602, 106 Pac. 866, 26 L. R. A. (N. S.) 217, this court, in another opinion by Mr. Justice Williams, citing *Randolph v. Hudson, Cotton v. John Deere Plow Co.*, and *Clevenger v. Lewis, supra,* said:

"It was uniformly held by the Supreme Court of the territory of Oklahoma that a note containing a stipulation for the payment of an attorney's fee is not negotiable. * * * This rule has been adhered to by this court. *Clevenger v. Lewis, supra,* 20 Okla. 837, 95 Pac. 230, 16 L. R. A. (N. S.) 410, 16 Ann. Cas. 56."

See, also, *Hegeler v. Comstock,* 1 S. D. 138, 45 N. W. 331, 8 L. R. A. 393; *Cornish v. Woolverton,* 32 Mont. 456, 81 Pac. 4, 108 Am. St. Rep. 598; *Nat. Bk. of Commerce v. Feeney,* 12 S. D. 156, 80 N. W. 186, 46 L. R. A. 732, 76 Am. St. Rep. 594—decisions based upon statutes identical with ours, *supra.* In all of the foregoing decisions the ground upon which they were based is that the notes in controversy contain provisions not certain of fulfillment.

In *Cornish v. Woolverton, supra,* the note in question was held to be nonnegotiable because it contained the identical provision contained in the note herein, except that it provided for 6 per cent. until maturity and 12 per cent. thereafter.

We must hold, therefore, that the note in controversy here, at the time it was purchased by plaintiff, was so indefinite as to the amount to be paid and so uncertain as to fulfillment as to render it nonnegotiable.

As to the second proposition, let it be observed that under the conditions of the guaranty the defendants did not bind themselves to accept another horse in case the one they had proved unsatisfactory, or did not come up to the warranty, but it clearly implies an option on their part to accept or not another horse.

In *Kemp v. Freeman,* 42 Ill. App. 500, the identical question of the right of option involved in the case at bar was before the Illinois Court of Appeals, and on the following provision in the warranty, to wit:

"We warrant the animal to be sound and healthy and in every respect an average breeder, and, in case he fails to be an average breeder, we agree to take him back and replace him with another horse of equal value and merits,"

—the court said:

"A contract 'no doubt might have been so framed as to deprive the appellee of his legal right to an action for damages in

case of a breach, and to require him in lieu thereof to return the horse and accept another that would satisfy the warranty. The contract under consideration does not, however, even purport to do so; but, on the contrary, by it the sellers warrant the horse to be an average breeder, and in addition to such warranty upon which the buyer may recover damages, if there be a breach, the sellers agree that they will accept a return of the horse and replace him with another of merit and value equal to the warranty. Clearly the buyer has the option of an action on the breach for damages, or to return the horse and receive another in his stead.' "

This quotation from the foregoing opinion of the Illinois court is quoted with approval by this court in *Obenchain & Boyer v. Roff,* 29 Okla. 211, 116 Pac. 782.

It is clear, therefore, that the purchasers of the horse had the option to return the horse and take chances on another, or to keep him and sue for damages, and, if they had the right of action for damages for breach of the warranty, they certainly had the right to rescind for such breach. And having elected to exercise such right, and the note in question being nonnegotiable, and subject to all defenses which might have been interposed against it in the hands of the original payee, and one which it is not seriously denied was without consideration, it follows, therefore, that the defendants were deprived of their legal rights in the premises, and that the trial court erred in so doing.

The judgment should be reversed, and the cause remanded.

By the Court: It is so ordered.