## SECURITY TRUST & SAVINGS BANK OF CHARLES CITY, IOWA, v. GLEICHMANN.

No. 4118.   Opinion Filed July 6, 1915.

Rehearing Denied August 3, 1915.

(150 Pac. 908.)

1.  **CONTRACTS—What Law Governs—Place of Execution.** Where contracts are made in one place, to be executed in another, the law of the place of execution governs.

2.  **BILLS AND NOTES—Negotiability—What Law Governs.** Where a note, dated at Charles City, Iowa, and payable there to a resident of that place, is not negotiable by the law of Oklahoma, but is negotiable by the law of Iowa, **held,** the note is governed by the laws of Iowa.

Security Trust & Savings Bank of Charles City, Iowa, v. Gleichmann.

3.  **SAME—Negotiable Instruments—Rights of Holder—Bad Faith.**
    Bad faith, not merely notice of circumstances sufficient to put a prudent man upon inquiry, is necessary to defeat the recovery by the holder of negotiable paper, whose rights accrued before maturity.

4.  **SAME—Bona Fide Holder—Knowledge of Consideration.** Knowledge that a note was given in consideration of an executory agreement of the payee, which has not been performed, will not deprive the indorsee of the character of a bona fide holder, unless he also has knowledge of the breach of the agreement.

5.  **CORPORATIONS—Acts and Knowledge of Officers.** A corporation is not bound by the acts, nor chargeable with knowledge, of one of its officers in respect to a transaction in which such officer is acting in his own interest.

6.  **BILLS AND NOTES—Negotiable Instruments—What Constitutes.** A note dated May 1, 1905, which provides, "with interest at 8 per cent. from November 1, 1905, until paid, interest from date if not paid when due," is a negotiable instrument, following **Savings Bank v. Landis,** 37 Okla. 530, 132 Pac. 1101; and overruling **Randolph v. Hudson,** 12 Okla. 516, 74 Pac. 946; and **Bracken v. Fidelity Trust Co.,** 42 Okla. 118, 141 Pac. 6, L. R. A. 1915-B, 1216.

    (Syllabus by Devereux, C.)

*Error from District Court, Canadian County;*
*John J. Carney, Judge.*

Action by the Security Trust & Savings Bank of Charles City, Iowa, against G. F. Gleichmann. Judgment for defendant, and plaintiff brings error. Reversed, and new trial granted.

Former opinion, published in 147 Pac. 1009, withdrawn.

[NOTE.—This case, to the extent of the rule announced in the sixth paragraph of the syllabus and in so far as the same overrules *Randolph v. Hudson,* 12 Okla. 516, has been overruled by *Union Nat. Bank v. Mayfield,* decided December 11, 1917.]

This was an action by the plaintiff in error on two notes executed by the defendant in error to the Hart-Parr Company. The amended petition alleges that on the 5th day of May, 1905, at Charles City, Iowa, the de-

fendant executed his promissory notes to the Hart-Parr
Company, one for $500, and the other for $1,000, payable
at the office of the Hart-Parr Company, at Charles City,
Iowa, but that before maturity and for a valuable con-
sideration the Hart-Parr Company sold and delivered
the notes to the plaintiff, and that the plaintiff is the
owner and holder thereof, and that the notes are wholly
unpaid.

There are two causes of action set out in the petition,
one on the $500 note, and the other on the $1,000 note,
and it appears that the $1,000 note was not due when the
action was commenced, but it was stipulated that the
plaintiff might file an amended petition embracing the
$1,000 note, which was given as a part of the same trans-
action as the $500 note, with the same effect as if it had
matured prior to the commencement of the action. These
notes are attached to the petition, and read as follows:

"$1,000.00            CHARLES CITY, IOWA, May 1, 1905.

"On or before the 1st day of November, 1906, I,
the subscriber, of the town of Okarche, county of Cana-
dian, Territory of Oklahoma, promise to pay to Hart-Parr
Company, or order, $1,000.00, payable at the office of
Hart-Parr Company, at Charles City, Iowa, for value re-
ceived, with interest at eight per cent., payable annually
from date until paid. If sued, a reasonable attorney's
fee may be recovered.

"G. F. GLEICHMANN."

The other note is in a slightly different form, and is
as follows:

"$500.00            CHARLES CITY, IOWA, May 1, 1905.

"On or before the 1st day of November, 1905, I, the
subscriber, of the Town of Okarche, county of Canadian,
Territory of Oklahoma, promise to pay the Hart-Parr
Company, or order, $500.00, payable at the office of Hart-
Parr Company, at Charles City, Iowa, for value received,

with interest at eight per cent., payable annually from November 1, 1905, until paid. Interest from date if not paid when due. If sued a reasonable attorney's fee may be recovered.

"G. F. GLEICHMANN."

The answer is: First, a general denial; and, second, it admits the execution of the notes, but alleges that they were made, executed, and delivered to the Hart-Parr Company, at the town of Okarche, in Canadian county, Okla., and not at Charles City, Iowa; also it alleges that the notes were without consideration, and that the Hart-Parr Company did not furnish the defendant with any money, paper, or other thing of value as a consideration for the execution of the notes, and that the transferees took the notes with notice, and were not holders for value, and were not acting in good faith; also the defendant alleges that the notes were given as part of the purchase price of a gasoline engine which was sold on a warranty of fitness to do certain work, which it failed to do, but, in the view we take of the case, it is not necessary to more fully set out the allegations in this respect. The plaintiff replied to this answer as follows:

"Said plaintiff, further replying, alleges that it is an Iowa corporation doing business within the State of Iowa, that the said notes executed by the said defendant were by the said defendant dated at the said Charles City, Iowa, and made payable to the Hart-Parr Company, an Iowa corporation, doing business at Charles City, Iowa, that the said notes were payable at the office of the Hart-Parr Company at Charles City, in the State of Iowa, and on their face appear to be for collection, use, and discount at the said Charles City, within the State of Iowa, that by the execution of the said instruments there was created an Iowa contract to be interpreted, considered, applied, and executed and governed by the laws of the State of Iowa, and this plaintiff alleges that it took the

said instruments in due course of business for valuable consideration and before maturity, and that it holds the same free and clear of any alleged or pretended equities between the maker and the payee thereof, and this plaintiff alleges that the law of Iowa at the time of the execution of the said note and at the time of the indorsement of the same to plaintiff was as follows: 'Sec. 2082. Notes in writing, made and signed by any person, promising to pay to another person or his order or bearer or to bearer only, any sum of money, are negotiable by indorsement or delivery in the same manner as inland bills of exchange, according to the custom of merchants' (Code 1873).

"And the plaintiff further alleges that said law, as construed and applied by the courts of the State of Iowa, as governing the meaning, construction, and character of the said instrument, is held by the courts of the State of Iowa to make such paper negotiable, free from equities, when transferred in due course and before maturity; that at the time of the execution, delivery, and indorsement of the notes sued on herein the common law of the State of Iowa, as adjudged by the court of said state, was that said notes were, under the common law of the State of Iowa, as well as the statute law of the State of Iowa, negotiable, and when transferred in due course and before maturity held free of equities as between the original parties thereto.

"The plaintiff alleges that it so holds said notes. Plaintiff further alleges that the said defendant, G. F. Gleichmann, by the execution and delivery of the said notes in the manner and form as alleged, gave assurance to the world that the said notes were executed and payable, and for use, within the State of Iowa, and that the said defendant is estopped by his actions and such execution of the said notes to dispute the truthfulness of said notes and every material part or parcel thereof."

Much evidence was introduced on the trial by both parties, that on the part of the defendant tending to show

that the warranty set out in the answer, and on which the machine was purchased, had been broken, and that the engine did not do the work as guaranteed, and for the purpose of this opinion we assume this to be true. There was also evidence that the directors of plaintiff bank in 1905 were A. E. Ellis, C. D. Ellis, W. M. Ellis, Morton Wilbur, and W. B. Johnson; Morton Wilbur, cashier, and C. D. Ellis, vice-president; that the directors of the Hart-Parr Company, the payee of the notes, were then C. W. Hart, C. H. Parr, H. C. Raymond, N. Fruden, and A. E. Ellis. A. E. Ellis was the same person that was president of the plaintiff bank. The plaintiff introduced evidence tending to prove that it purchased the notes in controversy before maturity for value and without notice, and it also offered in evidence the statute of Iowa and the decisions of its Supreme Court holding that the fact that the note provides for an attorney's fee does not render it non-negotiable. Evidence was also introduced that the notes were signed and delivered to an agent of the Hart-Parr Company at Okarche, Okla. On the question whether or not these were Oklahoma or Iowa contracts the trial court, among other things, charged:

"On the contrary, if you believe from the evidence that the plaintiff bank had knowledge of the alleged defect in the title of the said notes of the Hart-Parr Company, or knew that the payment of the same would be resisted by the defendant on account of any breach of contract between the Hart-Parr Company and the defendant, or if you believe that the plaintiff had knowledge of the fact that said notes were executed in Oklahoma, and not in Iowa, then the said notes are to be construed according to the laws of Oklahoma, provided you believe that the said notes were actually executed in the State of Oklahoma. And if you believe from the evidence that the said notes were executed at Okarche, Okla., and

that the plaintiff bank knew that the said notes were executed in Okarche, and not in Iowa, or if you believe from the evidence that the plaintiff bank had knowledge of any defect in the title of said notes, or had knowledge of any difficulties between the defendant, Gleichmann, and the Hart-Parr Company concerning the payment of the said notes and the defects of the machinery for which said notes were given, then in either event the said notes were not subject to negotiation to said plaintiff as negotiable notes, and, if purchased by the plaintiff, were purchased subject to any defense which the defendant could have made as to the original payee of the said notes, including the defense of want of consideration, and also the defense of fraud."

An exception was duly saved to this instruction, and it is assigned as error in this court. On the issue of notice, the court charged the jury:

"You are instructed that, if the Hart-Parr Company and the banks who have dealt in the notes sued on were corporations, and that the officers, directors, or stockholders who dealt in these notes were interested both in the Hart-Parr Company and in the banks purchasing these notes, that this fact be considered by you in determining whether they had knowledge or notice of the defense or defenses to this note, and had notice or knowledge of the fact that the engine for which the notes were given was of no value, or had knowledge of such facts in connection with the quality of such engine as would put a reasonably prudent man upon inquiry as to the facts surrounding the transaction in which the notes were taken and the circumstances under which they were given, and, if you find that such circumstances were known to the officers or directors of the purchasing bank as would have led them to suppose that the engine sold or attempted to be sold to the defendant was defective, and that they failed to inquire into the facts, they are bound by such facts as the omitted inquiry would have disclosed, the same as though they had inquired and ascertained them."

An exception was duly saved to this charge, and it is assigned as error.

*Blake & Boys,* for plaintiff in error.

*F. L. Boynton* and *P. S. Nagle,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The first assignment of error to be considered will be the charge of the court in regard to whether this was an Oklahoma or Iowa contract, and it will be noted that the court charged the jury that, if they "believed that the note was executed in Oklahoma, that that would make it an Oklahoma contract." In this there was error. In *Coghlan v. South Carolina Ry. Co.,* 142 U. S. 101, 12 Sup. Ct. 150, 35 L. Ed. 951, the Supreme Court of the United States say:

"We have seen that the bonds in suit were redeemable on the 1st day of January, 1866, and not before without the consent of the holder, and were payable in pounds sterling, with interest at the rate of five per cent. per annum from date, the interest to be paid semi-annually on named days, 'on presenting the proper coupons for the same at the house of Palmers, Mackillop, Dent & Co., London, where the principal will also be redeemed on the surrender of this certificate.' The contract, therefore, was one which in all its parts was to be performed in England. Nevertheless it is contended that the principal sum agreed to be paid should bear interest at the rate of seven per cent. fixed by the laws of South Carolina. The only basis for this contention is the mere fact that the bonds purport to have been made in that state. But that fact is not conclusive. All the terms of the contract must be examined, in connection with the attendant circumstances to ascertain what law was in the view of the parties when the contract was executed. For, as said by Chief Justice Marshall in *Wayman v. Southard,* 10

Wheat. 1, 48 (6 L. Ed. 253), it is a principle universally recognized that 'in every forum a contract is governed by the law with a view to which it was made.' "

In *Pritchard v. Norton*, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104, it is said:

"The phrase *lex loci contractus* is used, in a double sense, to mean, sometimes, the law of the place where a contract is entered into; sometimes that of the place of its performance. And when it is employed to describe the law of the seat of the obligation, it is, on that account, confusing. The law we are in search of, which is to decide upon the nature, interpretation, and validity of the engagement in question, is that which the parties have, either expressly or presumptively, incorporated into their contract as constituting its obligation. It has never been better described than it was incidentally by Mr. Chief Justice Marshall in *Wayman v. Southard*, 10 Wheat. 48, (6 L. Ed. 253), where he defined it as a principle of universal law—'the principal that in every forum a contract is governed by the law with a view to which it was made.' The same idea had been expressed by Lord Mansfield in *Robinson v. Bland*, 2 Burr. 1077. 'The law of the place,' he said, 'can never be the rule where the transaction is entered into with an express view to the law of another country, as the rule by which it is to be governed.' "

In *London Assur. v. Companhia De Moagens*, 167 U. S. 149, at 160, 17 Sup. Ct. 785, at 789 (42 L. Ed. 113), it is said:

"Generally speaking, the law of the place where the contract is to be performed is the law which governs as to its validity and interpretation. Story, in his work on Conflict of Laws, sec. 280, says: 'But where the contract is, either expressly or tacitly, to be performed in any other place, there the general rule is, in conformity to the presumed intention of the parties, that the contract, as to its validity, nature, obligation, and interpretation,

is to be governed by the law of the place of performance. This would seem to be a result of natural justice.'"

In *Andrews v. Pond,* 13 Pet. 65, 10 L. Ed. 61, Mr. Chief Justice Taney, in delivering the opinion of the court, said:

"The general principle in relation to contracts made in one place to be executed in another is well settled. They are to be governed by the law of the place of performance, and if the interest allowed by the laws of the place of performance is higher than that permitted at the place of the contract, the parties may stipulate for the higher interest, without incurring the penalties of usury."

In Parsons on Notes and Bills, 324, it is said:

"If a note or bill be made payable in a particular place, it is to be treated as if made there, without reference to the place at which it is written, or signed, or dated."

In *Miller v. Tiffany,* 1 Wall. 298, at page 310, 17 L. Ed. 540, it is said:

"A general principle in relation to contracts made in one place to be executed in another is well settled. They are to be governed by the law of the place of performance."

And the same principle is announced, and this case is cited with approval, in *Bedford v. Eastern Building & Loan Ass'n,* 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834.

The charge of the court, therefore, was erroneous. The court instructed the jury that, if they found that the note was executed and delivered in Oklahoma, it was then an Oklahoma contract and governed by the laws of Oklahoma, and this is directly in conflict with the authorities above cited.

The next assignment of error relates to the notice which the bank would have from the fact that the president of the bank was also a director of the Hart-Parr Company. There is error in this instruction in another particular, because the court charged that, if the bank had such notice of the transaction between the defendant in error and the Hart-Parr Company as would put a reasonably prudent man upon inquiry as to the facts surrounding the transaction, this would be notice to the bank. This, we think, is directly opposed to the decisions of this court. In *Forbes v. First National Bank of Enid*, 21 Okla. 206, 95 Pac. 785, it is held that knowledge of such facts as would put a prudent man upon inquiry with reference to a draft or negotiable instrument purchased by him is not sufficient to defeat the right of the holder, and the court may direct a verdict when the circumstances surrounding the transaction are not sufficiently strong for it to be said, as a matter of law, that bad faith may be inferred.

In *First National Bank of Watonga v. Wade*, 27 Okla. 102, 111 Pac. 205, 35 L. R. A. (N. S.) 775, in passing on this same question, this court has said:

"This court is committed to the doctrine that bad faith, not merely notice of circumstances sufficient to put a prudent man on inquiry, is necessary to defeat recovery by the holder of a negotiable paper whose right accrued before maturity."

But the question still remains whether the knowledge of the director of one corporation is to be attributed to another corporation in which he is president, when such knowledge was not involved in the business of the corporation sought to be charged. As we gather from the evidence in this case, the notes were discounted prior to the return of the engine and at a time when attempts

were still being made by the Hart-Parr Company to get the engine into a condition to do its work, and the notice which the director of the Hart-Parr Company had could only be to this effect.

*McNight v. Parsons*, 136 Iowa, 390, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265, 15 Ann. Cas. 665, 113 N. W. 858, is in its facts somewhat similar to the case at bar. In that case a negotiable note was sold before maturity, the note depending, however, on certain conditions. The court say:

"The courts quite universally hold that knowledge that a note was given in consideration of an executory agreement or contract of the payee which has not been performed will not deprive the indorsee of the character of a *bona fide* holder, unless he also has notice of the breach of that agreement or contract. See 1 Edwards, Bills & Notes, section 519; Daniel, Neg. Inst. 740-748; *Rublee v. Davis*, 33 Neb. 783 [51 N. W. 135, 29 Am. St. Rep. 509]; *Miller v. Finley*, 26 Mich. 249 [12 Am. Rep. 306]; *Porter v. Steel Co.*, 122 U. S. 267 [7 Sup. Ct. 1206, 30 L. Ed. 1210]."

But we are not disposed to carry the doctrine to the length of holding that notice to a director in one corporation is notice to another corporation in which he is also an officer. This question came up before the Supreme Court of North Carolina in the case of *Bank v. Burgwyn*, 110 N. C. 267, at page 273, 14 S. E. at page 623:

" 'The foundation principle upon which rests the doctrine that a party, whether an individual or corporation, is chargeable with notice imparted to his agents in the line of their duty, is that agents are presumed to communicate all such information to their principals because it is their duty so to do. The principal is conclusively presumed to know whatever his agent knows, if the latter knows it as agent. Of course, no such presumption can

exist where the agent is dealing with the corporation in the particular transaction in his own behalf.' So. Law Review, 816. In such transactions the attitude of the. agent is one of hostility to the principal. He is dealing at arm's length, and it would be absurd to suppose that he would communicate to the principal any facts within his private knowledge affecting the subject of his dealing, unless it would be his duty to do so, if he were wholly unconnected with the principal. As was said by the court in *Wickersham v. Chicago Zinc Co.,* 18 Kan. 481 [26 Am. Rep. 784]: 'Neither the acts nor knowledge of an officer of a corporation will bind it in a matter in which the officer acts for himself and deals with the corporation as if he had no official relations with it.' Or as was said in *Barnes v. Trenton Gaslight Co.,* 27 N. J. Eq. 33: 'His interest is opposed to that of the corporation, and the presumption is, not that he will communicate his. knowledge of any secret infirmity of the title to the corporation, but that he will conceal it.' This doctrine has been applied to the case of a director procuring the discount of a note for his own benefit, having knowledge that it is founded upon an illegal consideration (*Bank v. Christopher,* 40 N. J. Law, 435 [29 Am. Rep. 262]), or, that it was made for his accommodation (*Bank v. Cunningham,* 24 Pick. 270 [35 Am. Dec. 322]), or that it was obtained upon a false pretense of having it discounted for the maker (*Washington v. Lewis,* 22 Pick. 24), or that it was affected in his hands with certain conditions (*Bank v. Senecal,* 13 La. 525), or with a claim of recoupment of which the bank had no notice (*Loomis v. Bank,* 1 Dismey, 285), or with other equities (*Savings Bank v. Boston,* 124 Mass. 74; *Innerarity v. Bank,* 139 Mass. 332 [1 N. E. 282, 52 Am. Rep. 715]; *Stevenson v. Bay City,* 26 Mich. 44; *Frost v. Belmont,* 6 Allen [Mass.] 163, and other cases)."

But the charge of the court in the case at bar goes much beyond this or any other case which we have seen, for the jury is instructed that, if the Hart-Parr Company and the bank were corporations, and if the officers.

and directors or stockholders who dealt in the notes sued on were interested both in the Hart-Parr Company and the bank, this was a fact to be considered by them in determining whether they had notice. We know of no case which holds that notice to a stockholder of a corporation is under any circumstances notice to the corporation, unless communicated to it by the stockholder.

Another question, however, is presented in this case on the $500 note. It will be noticed that this note, dated May 1, 1905, provides for interest at 8 per cent. from November 1, 1905, until paid, interest from date if not paid when due. There is no evidence in the record as to what the laws of Iowa are in regard to the negotiability of a note containing this provision. In our court the decisions are conflicting.

In *Randolph v. Hudson*, 12 Okla. 516, 74 Pac. 946, it was held that a note reading, "Thirty days after date I promise to pay to the order of J. H. Thomas two hundred and seventy-five dollars, with interest at the rate of 12 per cent. from date if not paid at maturity," was not negotiable.

In *Citizens' Savings Bank v. Landis*, 37 Okla. 530, 132 Pac. 1101, it is held that a note reading, "December 1, 1907, after date, for value received, we jointly and severally promise to pay McLaughlin Bros., or order, $1,200.00 at the Walters National Bank, of Walters, Okla., with interest at 6 per cent. per annum, before maturity, and thereafter at 10 per cent. per annum until paid, interest payable annually," was a negotiable instrument.

In *Bracken v. Fidelity Trust Co.*, 42 Okla. 118, 141 Pac. 6, L. R. A. 1915B, 1216, it is held:

"Under sections 3592, 3593, Wilsons' Rev. & Ann. St. 1903 of Oklahoma, a note dated January 12, 1906, containing the following provision: 'With interest at 6 per cent. per annum before maturity, and thereafter with interest at 10 per cent. per annum until paid; interest payable with note'—was a nonnegotiable note."

There is a direct conflict between the decisions in 37 Okla. 530, 132 Pac. 1101, *supra*, and the case just cited. The language of the note under consideration is not precisely that in the Landis or Bracken Cases, *supra*. In the Landis Case the language was "with interest at 6 per cent before maturity, and thereafter at 10 per cent. until paid." This was a note held negotiable. In the Bracken Case the note was "with interest at 6 per cent. before maturity, thereafter with interest at 10 per cent. until paid," which is identical, in substance, with the note in the Landis Case. The note in the case at bar is identical in substance with that in the *Randolph v. Hudson* Case, 12 Okla. 516, 74 Pac. 946, *supra*, which reads, "with interest at the rate of 12 per cent. from date if not paid at maturity." In the case under consideration the language is "with interest from date if not paid when due."

In this conflict of authority in this court it becomes necessary to look at the decisions of other states to determine which line of cases we should follow. The decided weight of authority seems to be in favor of holding the note in the present case negotiable, and in support of the rule laid down in the case of *Citizens' Savings Bank v. Landis*, 37 Okla. 530, 132 Pac. 1101. In *Parker v. Plymell*, 23 Kan. 402, a note contained a promise to pay interest at 12 per cent. after maturity, followed by the words, "if this note is not paid at maturity the same shall bear 12 per cent. interest from date," and this was held not to render the note nonnegotiable. In *Hope v.*

*Barker,* 112 Mo. 338, 20 S. W. 567, 34 Am. St. Rep. 387, it is held that an instrument promising to pay a stated sum without interest thereon if paid at maturity, if not paid at maturity, to pay 10 per cent. interest from date, is a negotiable instrument. In *Crump v. Berdan,* 97 Mich. 293, 56 N. W. 559, 37 Am. St. Rep. 345, it is held that a note providing for the payment of a certain sum, with interest at 7 per cent., was not rendered nonnegotiable on the ground that it was uncertain as to amount by the provision that, if not paid when due, 10 per cent. interest from date should be paid, and the same thing is held in *Christian County Bank v. Goode,* 44 Mo. App. 129; and see *Clark v. Steen,* 61 Kan. 526, 60 Pac. 327, 49 L. R. A. 190, 78 Am. St. Rep. 337.

Many additional cases holding the same way will be found collected in the note to *Bracken v. Fidelity Trust Co.,* 42 Okla. 118, 141 Pac. 6, L. R. A. 1915B, 1216. In *Merrill v. Hurley,* 6 S. D. 592, 62 N. W. 958, 55 Am. St. Rep. 859, it is held that the negotiability of a promissory note is not affected by the provision for a specified additional rate of interest after maturity. This case is of special interest, as it throws doubt upon the decision of *Hegeler v. Comstock,* 1 S. D. 138, 45 N. W. 331, 8 L. R. A. 393, relied upon by the Supreme Court of the Territory of Oklahoma in *Randolph v. Hudson,* 12 Okla. 516, 74 Pac. 946. See, also, *Crump v. Burdan,* 97 Mich. 293, 56 N. W. 559, 37 Am. St. Rep. 345.

Upon consideration of these cases, we are of opinion that the true rule is laid down by this court in *Citizens' Savings Bank v. Landis,* 37 Okla. 530, 132 Pac. 1101, and that the cases of *Randolph v. Hudson,* 12 Okla. 516, 74 Pac. 946, and *Bracken v. Fidelity Trust Co.,* 42 Okla. 118, 141 Pac. 6, L. R. A. 1915B, 1216, should be overruled.

We therefore recommend that the judgment below be reversed, and a new trial granted.

By the Court: It is so ordered.