## CAPITAL CITY STATE BANK v. SWIFT et al.

(District Court, E. D. Oklahoma.   May 29, 1923.)

No. 3868.

1. Courts ⟜372(1)—Federal courts not controlled by state decisions on questions of commercial law.

In respect to doctrines of commercial law and general jurisprudence, the federal courts are not controlled by decisions based on local statutes or local usage, but will exercise their own independent judgment.

2. Courts ⟜372(1)—Construction by state courts of statute declaratory of common law not binding on federal court.

Where the statute of a state is merely declaratory of the general principles of the common law, a federal court in that state is not bound by the construction of such statute by the highest court of the state, where a question of general commercial law is involved.

3. Bills and notes ⟜157—Uncertainty as to amount payable after dishonor does not affect negotiability.

If the amount due on a bill or note at any time before and at maturity is fixed and certain, its negotiability is not affected by provisions which may render the amount uncertain after it has been dishonored.

4. Bills and notes ⟜157—Trade acceptance held negotiable.

A provision in a trade acceptance, "if paid when due a discount of $156.73 may be deducted, reducing the face of this acceptance to $3,142.98," *held* not to render it nonnegotiable under the Uniform Negotiable Instruments Act of Oklahoma (Comp. St. Okl. 1921, §§ 7671, 7672).

At Law.   Action by the Capital City State Bank against H. F. Swift, trading as the Auto & Tire Exchange, and others.   Judgment for plaintiff.

Owen, Yancey & Fist, of Tulsa, Okl., for plaintiff.
Aby & Tucker and Frank Settle, all of Tulsa, Okl., for defendants.

PHILLIPS, District Judge.   This is an action brought by the plaintiff to recover from the defendants on a trade acceptance.   The trade acceptance reads as follows:

"329965.                                                    6—10—22.
"1.60 Pro. fees.
"Trade Acceptance.
"No. 3301.25.                                            Jan. 10, 1922.
"On June 10, 1922, pay to the order of ourselves thirty-two hundred ninety-nine and 65/100 dollars, with interest from said date 5% per annum.
"The obligation of the acceptor arises out of the purchase of goods from the drawer.   The acceptor may make this acceptance payable at any bank, banker or trust company in the United States which he may designate.
"If paid when due a discount of $156.73 may be deducted reducing the face of this acceptance to $3,142.92.
"To Auto & Tire Exchange, Tulsa, Okla.
"Okla. City Branch, Hawkeye Tire & Rubber Company,
"69501.                                              By N. J. Booth.
"Protested for nonpayment Tulsa, Okla., 6—10—192—.
"R. K. Phipps, Notary.
"My commission expires January, 9, 1926."

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It bears the following indorsements:

"Guy M. Davis.
"J. T. Forster.
"Without recourse.

"Hawkeye Tire & Rubber Co.,<br>"By John Christas."

(Revenue stamps: One 50-cent, three 4-cent, and one 2-cent, duly canceled on January 14, 1922, by Hawkeye Tire & Rubber Company.)
"Pay to the order of any bank or banker for collection.

"Capital City State Bank,

"33–7   Des Moines, Iowa   33–7          Will A. Luge, Cashier."

The evidence shows that the plaintiff purchased this trade acceptance in good faith, for value, prior to maturity and in the usual course of business, and without knowledge of any defense of the acceptor against the drawer thereof.

The defendants maintain that the trade acceptance is not negotiable and seek to set up as a defense against the plaintiff that they paid the acceptor in cash and by goods returned the full amount of the trade acceptance.

Defendants contend that the trade acceptance is nonnegotiable because of the following language therein contained:

"If paid when due a discount of $156.73 may be deducted reducing the face of this acceptance to $3,142.92."

Trade acceptances are to-day in more general use than any other form of negotiable instrument, except bank checks. They are taken primarily to be discounted and perform a very important function in commercial credits. It has always been the custom and practice of merchants to discount accounts if paid promptly at maturity. It is only natural that they have written this feature into the terms of trade acceptances. Does such a condition render nonnegotiable an instrument intended primarily to be discounted as a negotiable instrument?

Defendants contend that under the decisions of the Oklahoma courts such an instrument is nonnegotiable, and that this court should follow those decisions.

Counsel for defendants cites and relies upon the following Oklahoma cases: First National Bank of Iowa City v. Watson, 56 Okl. 495, 155 Pac. 1152; Union National Bank v. Mayfield (Sup.) 169 Pac. 626; Farmers' Loan & Trust Co. v. McCoy & Spivey Brothers, 32 Okl. 277, 122 Pac. 125, 40 L. R. A. (N. S.) 177 and the L. R. A. note appended to this decision in 40 L. R. A. (N. S.).

Oklahoma adopted the Uniform Negotiable Instrument Act in 1909. Sections 7671 and 7672, Compiled Oklahoma Statutes 1921, read as follows:

"7671. *Requirements of Negotiable Instruments.*—An instrument to be negotiable must conform to the following requirements:

"First. It must be in writing and signed by the maker or drawer;

"Second. Must contain an unconditional promise or order to pay a sum certain in money;

"Third. Must be payable on demand, or at a fixed or determinable future time;

"Fourth. Must be payable to order or to bearer; and

"Fifth. Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty.

"7672. *When Sum Payable is a Sum Certain.*—The sum payable is a sum certain within the meaning of this chapter; although it is to be paid:

"First. With interest; or

"Second. By stated installments; or

"Third. By stated installments, with a provision that upon default in payment of any installment or of interest, the whole shall become due; or

"Fourth. With exchange, whether at a fixed rate or at the current rate; or

"Fifth. With costs of collection or an attorney's fee, in case payment shall not be made at maturity."

The above sections of this statute merely declare the common law merchant as to the fundamental requirements of negotiable instruments as it was generally recognized prior to the adoption of the Negotiable Instrument Act. See Smith v. Nelson Land & Cattle Co., 212 Fed. 56, 128 C. C. A. 512.

In the case of Farmers' Loan & Trust Co. v. McCoy & Spivey Bros., 32 Okl. 277, 122 Pac. 125, 40 L. R. A. (N. S.) 177, the Oklahoma Supreme Court, in an opinion by Commissioner Sharp, held that a note given December 16, 1908, payable in installments three months apart, which contained the following provisions, "A discount of five per cent. will be allowed if paid within fifteen days from date," was uncertain as to the amount necessary to satisfy it at the time of its execution and therefore nonnegotiable.

In the case of Security Trust & Savings Bank of Charles City, Iowa, v. Gleichmann, 50 Okl. 441, 150 Pac. 908, L. R. A. 1915F, 1203, the Oklahoma Supreme Court, in a decision by Commissioner Devereux, held that a note dated May 1, 1905, due on or before the 1st day of November, 1905, and which contained the following provisions, "with interest at eight per cent. payable annually from November 1, 1905, until paid. Interest from date if not paid when due," was certain as to amount and negotiable.

See, also, First National Bank of Iowa City, Iowa, v. Watson, 56 Okl. 495, 155 Pac. 1152, where a note containing a provision substantially the same as the one involved in Farmers' Loan & Trust Co. v. McCoy & Spivey Bros., supra, was held nonnegotiable.

In the case of Union National Bank v. Mayfield, 169 Pac. 626, the Supreme Court of Oklahoma, in an opinion by Commissioner Rummons, held that a note containing the following provision, "with interest at the rate of nine per cent. per annum, payable annually from date: Provided, however, if the note is paid on or before maturity, interest shall be only seven per cent.," was uncertain as to amount and nonnegotiable and expressly overruled Security Trust & Savings Bank v. Gleichmann, supra.

Had the decision in Union National Bank v. Mayfield, supra, as reported in the 169 Pacific, remained as the last pronouncement of that court on the question, the position of counsel for defendants as to the Oklahoma holdings might be tenable. Counsel, however, no doubt through inadvertence, overlooked the fact that this case again came before the Supreme Court of Oklahoma on a motion for rehearing as reported in 174 Pac. 1034, 2 A. L. R. 135. In this decision the Oklahoma court, speaking through Chief Justice Sharp, took a contrary

view to that expressed by Commissioner Rummons in the former hearing reported in 169 Pacific, and cited with approval the decision by Commissioner Devereux in Savings Bank v. Gleichmann, 50 Okl. 441, 150 Pac. 908, L. R. A. 1915F, 1203. We quote from the opinion as follows:

"(1) Do the words 'with interest at the rate of nine per cent. per annum, payable annually, from date until paid: Provided, however, if note is paid on or before maturity, interest shall be only seven per cent.,' affect the negotiable character of the note? Counsel cite in support of their contention the following cases: Randolph v. Hudson, 12 Okl. 516, 74 Pac. 946; Cotton v. John Deere Plow Co., 14 Okl. 605, 78 Pac. 321; Dickerson v. Higgins, 15 Okl. 588, 82 Pac. 649; Clevenger v. Lewis, 20 Okl. 837, 96 Pac. 230, 16 L. R. A. (N. S.) 410, 16 Ann. Cas. 56; Clowers v. Snowden, 21 Okl. 476, 96 Pac. 596; Farmers' Loan & Trust Co. v. McCoy & Spivey Bros., 32 Okl. 277, 122 Pac. 125, 40 L. R. A. (N. S.) 177; Bracken v. Fidelity Trust Co., 42 Okl. 118, 141 Pac. 6, L. R. A. 1915B, 1216; Stutsman County v. Wallace, 142 U. S. 312, 12 Sup. Ct. 227, 35 L. Ed. 1018. The Cotton Case simply held that the provision for payment of attorney's fees in a promissory note, as the law then stood, destroyed the negotiable character of the note. In the Dickerson Case it is not clear on what grounds the note was declared nonnegotiable, though as in the Cotton Case (cited as an authority) it contained a provision for the payment of attorney's fees. The Clevenger Case also contained a provision for the payment of an attorney's fee and was held to be nonnegotiable. The Clowers Case was also held not to be negotiable because of a provision for the payment of an attorney's fee. In the Farmers' Loan & Trust Co. Case the note was held to be nonnegotiable because of a stipulation providing that, if paid within 15 days from date, a discount of 5 per cent. would be allowed. In the Bracken Case the note provided for 'interest at six per cent. per annum before maturity, and thereafter with interest at ten per cent. per annum until paid, interest payable with note,' and was held to be nonnegotiable. The rule announced in the Bracken Case was disapproved by the subsequent opinion in Security Trust & Savings Bank v. Gleichmann, 50 Okl. 441, 150 Pac. 908, L. R. A. 1915F, 1203, and we think correctly so. The case of Hegeler v. Comstock, 1 S. D. 138, 45 N. W. 331, 8 L. R. A. 393, followed by the territorial Supreme Court in Randolph v. Hudson, 12 Okl. 516, 74 Pac. 946, was disapproved in Citizens' Savings Bank v. Landis, 37 Okl. 530, 132 Pac. 1101, as well as by the opinion in the Gleichmann Case, and cannot therefore be considered as an authority. The notes involved in the several cases cited and arising in this court were all made prior to June, 1909, during which month the present negotiable instrument statute was adopted. Chapter 24, p. 387, Sess. L. 1909. * * *"

(Here the court sets out certain provisions of the act.)

"An examination of these several provisions leads us to conclude that there is nothing contained therein, or in the present negotiable instrument statute which in the instant case tends to make the amount payable uncertain within the meaning of the statute. The provision with respect to interest means nothing more nor less than that interest was payable from date until maturity at 7 per cent. per annum, but, if not paid when due, it should bear interest at the rate of 9 per cent. per annum from date. In Citizens' Savings Bank v. Landis, supra, it was held that an instrument, which in its terms and form was a negotiable promissory note, did not lose that character because it also provided that an additional rate of interest should be paid after maturity. This rule finds support in many of the authorities, as may be found from a reading of the cases cited in 8 Corpus Juris, § 253, where it is said that under the Negotiable Instruments Law not only may a provision be made for reserving interest after maturity, but for an increased rate of interest. The note could have been discharged on or before maturity by the payment of interest from date at the rate of 7 per cent. per annum; if not paid then, it could have been paid at any time thereafter upon the payment of interest at 9 per cent. per annum, payable annually. As stated by that eminent jurist,

Justice Brewer, in Parker v. Plymell, 23 Kan. 402, in a case involving a somewhat similar provision:

"'Clearly these words do not destroy the negotiability of the paper. They do not leave uncertain either the fact, the time, or the amount of payment. Indeed, up to and including the maturity of the notes, they are entirely without force. They become operative only after the notes are dishonored and have ceased to be negotiable, and then there is no uncertainty in the manner or extent of their operation. They create, as it were, a penalty for nonpayment at maturity, and a penalty the amount of which is definite, certain, and fixed.'"

I can see no distinction in principle between the Union National Bank Case and the case at bar, and therefore conclude that the last pronouncement of the Oklahoma court on the question here involved is contrary to the contentions of counsel for defendants.

[1] But be that as it may, I do not believe this court is bound by the decisions of the Oklahoma court. Since the decision in Swift v. Tyson, 16 Pet. 1, 19, 10 L. Ed. 865, it has been the accepted doctrine of the United States courts that in respect to the doctrines of commercial law and general jurisprudence such courts will exercise their own independent judgment and will not be controlled by decisions based upon local statutes or local usage. Burgess v. Seligman, 107 U. S. 20, 33, 34, 2 Sup. Ct. 10, 27 L. Ed. 359; Pana v. Bowler, 107 U. S. 529, 2 Sup. Ct. 704, 27 L. Ed. 424; Oates v. National Bank, 100 U. S. 239, 246, 25 L. Ed. 580; Town of Newbern et al. v. National Bank of Barnesville, Ohio, 234 Fed. 209, 216, 148 C. C. A. 111, L. R. A. 1917B, 1019; and Presidio County v. Noel-Young Bond Co., 212 U. S. 58, 73, 29 Sup. Ct. 237, 53 L. Ed. 402.

In the case of Smith v. Nelson Land & Cattle Co., 212 Fed. 56, 128 C. C. A. 512, the Circuit Court of Appeals for the Eighth Circuit, had before it for consideration the question of the negotiability of a promissory note. I quote from the opinion as follows:

"It is claimed that the notes are not negotiable in form by reason of the following language found therein:

"'The makers, indorsers and guarantors of this note hereby severally waive presentment of payment, notice of nonpayment, protest and notice of protest, and diligence in bringing suit against any party hereto, and sureties consent that time of payment may be extended without notice thereof.'

"The notes are undoubtedly Kansas contracts; and, while we are not bound to follow the view expressed by the highest tribunal of the state upon general principles of the common law merchant (Oates v. National Bank, 100 U. S. 239. 25 L. Ed. 580; Railroad Co. v. National Bank, 102 U. S. 14, 26 L. Ed. 61; Dygert v. Vermont Loan & Trust Co., 94 Fed. 913, 37 C. C. A. 389; Northern Nat. Bank v. Hoopes [C. C.] 98 Fed. 935; Phipps v. Harding, 70 Fed. 471, 17 C. C. A. 203, 30 L. R. A. 513) when, however, a state has adopted a negotiable instrument law by statute, we must give force and effect to such law in all cases where the same is applicable. We do not find, however, that section 5254, Gen. Stat. Kan. 1909, has changed the common law merchant as to the fundamental requirements of negotiable instruments. It provides that such instruments:

"'(1) Must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand, or at a fixed or determinable future time; (4) must be payable to order or to bearer.'"

[2] The Kansas statute and the Oklahoma statute are substantially the same, if not identical. These statutes have merely declared what

was formerly generally recognized as the common law merchant. Where the statute of a state is merely declaratory of the general principles of the common law, a federal court sitting in that state is not bound by the construction of such statute by the highest court of such state where a question of general commercial law is involved. Mutual Life Insurance Co. of New York v. Lane (C. C.) 151 Fed. 276, at page 281. I therefore hold that the Oklahoma decisions are not binding upon me.

[3] Under the decided weight of authority in this country the provision contained in the trade acceptance in the instant case does not render the same nonnegotiable. In making the foregoing statement I exclude those cases containing provisions which affect the instrument prior to its maturity, and therefore during the time that it is transferable as a negotiable instrument.

In the case of Loring v. Anderson, 95 Minn. 101, 103 N. W. 722, that court had before it for consideration a note due October 1, 1903, and which contained the following provisions:

"Value received, with interest before and after maturity at the rate of 10 per cent. per annum until paid.

"A discount of 6 per cent. to be allowed if paid on or before Oct. 1, 1903."

The court in the opinion said:

"The contention of the defendant is that it is not [a negotiable instrument], because the amount thereof depends upon a contingency. It is an essential condition of a promissory note that there be no uncertainty as to the amount of money it calls for at any particular time. Thus an instrument whereby the maker promises to pay to the payee or order or bearer a definite sum plus or minus a definite amount or discount is a promissory note, and hence it is negotiable; but, if the promise be to pay a stated sum of money plus or minus an indefinite amount or discount, it is not a negotiable instrument. Smith v. Crane, 33 Minn. 144, 22 N. W. 633, 53 Am. Rep. 20; 1 Daniel, Neg. Instruments, § 53; 4 Enc. of Law, 96. Within which of the two suggested classes does the instrument in question fall? This is a question of some difficulty. The case of Mansfield Savings Bank v. Miller, 2 Ohio Civ. Ct. R. 96, cited by counsel for the plaintiff, is the only one that we have been able to find touching the question. In that case the note contained this provision: 'If this note is paid in full when due a discount of $39.78 is to be made from the amount then due.' It was held that this provision did not render the note uncertain as to the amount thereof, for the reason that "the presumption is that parties will perform their obligations, rather than break them, and therefore, in the commercial world, if this note should be offered for negotiation, the amount at the time of payment would be known with certainty. While the note is undishonored and has any standing in the commercial world, the amount is definitely fixed. If any uncertainty could in any way arise, it is only when it becomes dishonored and ceases to have any standing as commercial paper.' This reasoning is applicable to the note here in question, for, in legal effect, it is a promise to pay October 1, 1903, $250, with interest at the rate of 10 per cent. per annum, less a discount of 6 per cent. if paid on or before maturity. If the note were not paid when due, there could be no uncertainty as to the amount recoverable on it, for such amount would depend not upon any contingency or question of fact, for the law would determine the amount due on the note from its terms. See Smith v. Crane, 33 Minn. 144, 22 N. W. 633, 53 Am. Rep. 20. On the other hand, while there is a contingency before the maturity of the note as to whether the maker will pay it at maturity or before, there is no contingency or uncertainty as to the amount to be paid in full discharge of the note at maturity or at any time before, if the maker elects to pay before. The amount is $250, with interest, less a discount of 6 per cent.—a

matter capable of being made certain by computation. The result of such computation would give the exact amount due on the note at its maturity and the exact amount which the maker was required to pay in full discharge of the note at any time before October 1, 1903, or at any time on that day, and the exact amount called for by the note at all times until it became dishonored by nonpayment.

"We therefore hold that the instrument which is the subject-matter of this action is a promissory note, and that the trial court did not err in directing a verdict for the plaintiff."

In the case of Farmers' National Bank of Valparaiso, Ind., v. Sutton Mfg. Co., C. C. A., Sixth Circuit, 52 Fed. 191, 3 C. C. A. 1, 17 L. R. A. 595, in an opinion by Mr. Justice Taft, then Circuit Judge, the court said:

"The indispensable qualities of a bill of exchange are that it shall be payable in a sum certain, at a time certain, to a person certain. It is intended to be a circulating medium until maturity. For this purpose every purchaser must know exactly what will be or ought to be paid on it at maturity. It only has currency on the hypothesis that it is to be paid at that time. If the sum then to be paid is fixed and certain, we do not see why that is not sufficient. A stipulation as to what shall be done in case the bill is not paid does not affect its character as a financial medium before it is dishonored. As soon as the bill is dishonored, it loses its value as a negotiable instrument, for thereafter an indorsee gains no better title than his transferrer. It is unreasonable to hold that the negotiability of a bill is lost because of a provision having no effect while it remains negotiable."

This case is cited with approval in a decision by the Eighth Circuit, Cudahy Packing Co. v. State Bank of St. Louis, Mo., 134 Fed. 538, 67 C. C. A. 662, where the court held that a provision for attorney's fees in the event a note was not paid at maturity did not render the same nonnegotiable. See, also, Farmers' Loan & Trust Co. of Iowa City v. Walter Planck, 98 Neb. 225, 152 N. W. 390, L. R. A. 1915E, 564, Ann. Cas. 1918B, 598, and cases therein cited; Hope v. Barker, 112 Mo. 338, 20 S. W. 567, 34 Am. St. Rep. 387; Parker v. Plymell, 23 Kan. 402; Crump v. Berdan, 97 Mich. 293, 56 N. W. 559, 37 Am. St. Rep. 345; Harrison v. Hunter (Tex. Civ. App.) 168 S. W. 1036; Iowa City First National Bank v. Rooney (Sask.) 11 Dom. L. R. 358, 24 West L. R. 163.

[4] At all times when the acceptance was subject to transfer as a negotiable instrument it was possible to determine absolutely from the face thereof the exact amount which would be due thereon at maturity. The amount of discount if paid at maturity was definite and certain. Changes which may arise because of dishonor or after dishonor, such as liability for attorney's fees, increased interest rate, loss of fixed amount of discount if not paid at maturity, and the like, do not in my opinion render the bill nonnegotiable.

I therefore find for the plaintiff as prayed for in the petition and will enter a judgment accordingly.